MAX POLKOWSKI (PLAINTIFF), RESPONDENT, v. ST. LOUIS PUBLIC SERV-
ICE COMPANY, A CORPORATION (DEFENDANT), APPELLANT.—68 S.
W. (2d) 884.

St. Louis Court of Appeals. Opinion filed March 6, 1934.

*John A. Witthaus* for respondent.

26

T. E. *Francis* and *S. G. Nipper* for appellant.

McCULLEN, J.—This is a suit for damages for personal injuries alleged to have been sustained by respondent, hereinafter referred to as plaintiff. Bernice Dailey and the St. Louis Public Service Company were named as defendants in the petition. A trial before the court and a jury resulted in a verdict for plaintiff and against both defendants, in the sum of $706. Defendant St. Louis Public Service Company, hereinafter referred to as appellant, has appealed.

Plaintiff's petition alleged that on the 9th day of December, 1924, plaintiff was a pedestrian upon the traveled portion of Cass Avenue, at or near Thirteenth Street, both open and public streets in the city of St. Louis, Missouri; that he was crossing Cass Avenue from the north to the south side thereof when he was struck by an automobile owned and driven by defendant Bernice Dailey, then being operated westwardly on Cass Avenue, and was also struck by an eastbound Cass Avenue street car owned and operated by the St. Louis Public Service Company, and as a result of being so struck he was seriously and permanently injured.

The negligence charged against the appellant was set forth in five assignments in plaintiff's petition. They were as follows: (1) Negligently operating its street car at a high and excessive rate of speed; (2) failure to keep a watch ahead for pedestrians in and approaching

its street car track; (3) failure to sound a gong or other warning of the approach of the street car; (4) failure to stop the street car when the operator in charge thereof could have seen that plaintiff was likely to be caught and trapped between the westbound automobile and the eastbound street car; (5) negligence under the humanitarian doctrine for failure to stop the street car, slacken its speed, or sound a warning of its approach.

Defendant Bernice Dailey filed a separate answer containing a general denial and a plea charging plaintiff with contributory negligence.

The answer of appellant was a general denial.

Appellant assigns as error the action of the trial court in overruling its instruction in the nature of a demurrer to the evidence at the close of the case, and in refusing to give its Instructions A, B, C and D, wherein it sought to withdraw from the consideration of the jury four of the five assignments of negligence alleged in the petition.

Appellant insists that there was no evidence to support the above mentioned assignments of negligence.

The evidence shows that Thirteenth Street and Cass Avenue are public streets in the City of St. Louis, the first named running north and south, and the other, east and west. There were two sets of appellant's street car tracks in Cass Avenue, one for eastbound street cars south of the middle of the street, and the other for westbound cars north of the middle of the street. The distance between the outside rails of the two sets of tracks was fifteen feet.

Plaintiff called as his witness, defendant Bernice Dailey. She testified that about eight o'clock in the evening on the date mentioned, she was operating a Chevrolet coupe westwardly on Cass Avenue, towards Thirteenth Street. She did not know whether her automobile was straddling the north rail of the westbound street car track, or was to the north thereof. She testified that she saw plaintiff when he left the side of the building on the northeast corner of Thirteenth Street and Cass Avenue, and saw him run across Cass Avenue from the north side toward the south. At that time her automobile, she judged, was about twenty-five feet east of Thirteenth Street, and going at about fifteen miles an hour. She stated that plaintiff was running at a moderate rate of speed; that Cass Avenue was about fifty feet wide, and a hard surfaced street. She said that when plaintiff got about to the eastbound street car track, he started to run back; that she tried to avoid hitting him and turned her automobile to the south; that plaintiff was then practically on the left fender of her car; that the left front fender of her car struck plaintiff and carried him along until her automobile came in contact with the left front end of the street car. She was unable to give any estimate of the distance in which her automobile could have been stopped, and was also unable to state just what distance plaintiff was carried on the fender of her car before it came in contact with the street car. She testified that

28

the street car was stopped on the west side of Thirteenth Street before the accident happened; that she noticed that the street car was in that position when she was about twenty or twenty-five feet east of Thirteenth Street, when plaintiff started to run across the street. She did not remember whether she sounded any horn as she approached Thirteenth Street. She stated that she saw the street car start across Thirteenth Street after she had seen it in a stationary position there, but she said she did not know where the street car stopped thereafter; that her automobile was against the front end of the street car when both came to a stop.

On cross-examination this witness was asked concerning the manner in which plaintiff was struck, and testified:

"Q. Did you strike him, or did he just step back into the side of the car? A. Stepped back into the side of my car."

When asked whether or not the street car was moving after plaintiff stepped back into the side of her car, the witness said she did not know.

Henry G. Fuchs, appellant's motorman who was in charge of the street car involved in the accident, was called as a witness for plaintiff. He testified that he was in charge of the street car eastbound in Cass Avenue; that when he first saw plaintiff, the street car was standing at the west side of Thirteenth Street, unloading passengers; that plaintiff was then standing on the sidewalk on the northeast corner of the intersection of the two streets, about two feet from the curbing on Cass Avenue. The witness said there was an automobile coming west about that time which was about twenty to twenty-five feet from the corner; that plaintiff stepped down hurriedly to cross the street, and that he suddenly stopped, backed up a little, and the left front fender of the automobile caught him and he was lying across the fender on his stomach. The witness said he had started up the street car after first seeing the plaintiff and the automobile; that he sounded the gong on the street car as he started up, to signal plaintiff, who had on a stocking cap and paid no attention to the gong; that when he, the witness, saw the automobile turn toward the south, he stopped the street car; that the street car had gone about ten feet. As to the speed of the street car at that time, the witness said, "I wasn't going a mile an hour." He stated that plaintiff had traveled about fifteen feet on Cass Avenue when he started up the street car, and that plaintiff was walking fast at that time, going in a southeast direction, with his back somewhat toward the witness; that plaintiff did not get to the center of the street; that he almost got across the front of the automobile, which was north of the north rail of the westbound tracks; that plaintiff was struck by the left front fender of the automobile after he had reached a point about fifteen feet from the north side of Cass Avenue. The witness said he judged plaintiff was about seven or eight feet away from the north

curb of Cass Avenue when the witness began to stop the street car; that Thirteenth Street was about fifty feet wide, and he judged Cass Avenue was about sixty feet wide at the intersection. He was asked to state whether or not the street car hit plaintiff. He answered, "No," but stated that plaintiff did come in contact with the left front end of the street car; that plaintiff was lying across the left front headlight of the automobile, and was in that position when he came in contact with the street car; that at the time of the collision the street car was standing still.

During the direct examination of this witness by plaintiff's counsel, he was asked questions as to the distance in which the street car could be stopped at various rates of speed under the circumstances existing at the time of the collision. Objections to these questions were made by appellant's counsel on the ground that no evidence of speed had been adduced upon which to base such questions.

Plaintiff's counsel said he would have testimony warranting the inference that the car was going at the speed embodied in his questions. The court then overruled the objections. The witness said the street car, going at one mile per hour, could be stopped in five feet.

Plaintiff himself testified that on the evening in question he was going south on the east side of Thirteenth Street, and that he was going to a watchmaker on Biddle Street; that when he came to the corner of Thirteenth and Cass Avenue, he stopped and looked around; that he looked east and did not see anything; that he looked west and saw a light and saw that a street car was coming, "but it was pretty far away." He said the street car was about two hundred feet away at that time; that he stepped off the sidewalk and started crossing the street and went in a straight line; that he had crossed possibly twenty or thirty feet and was on the third track from the north side of Cass Avenue when he was struck; that up to that time he did not see any automobile. He said he was walking about three miles an hour; that when he got past the center of Cass Avenue to the third rail of the street car tracks, he did not see anything, "only the street car hit me and knocked me over;" that when he was picked up he was lying between the street car and the automobile; that he did not see the street car at that time until after it hit him. He also said he did not see the automobile before it hit him. He was asked:

"Did you see the street car at any time between the time you first saw it when you started off the north side and the time when you got to the middle of Cass Avenue and when you were struck?"

He answered:

"I didn't see it after the first time I seen it. I was just walking across the street."

He was asked to state whether he heard any sound, gong or bell on the street car. He answered: "No, I didn't hear any sound, gong

or anything.'' He was asked whether he heard any horn sounded by the automobile before he was struck. He answered he did not.

After giving testimony as to the nature and extent of his injuries, plaintiff testified on cross-examination as follows:

''Q. I understand that you saw a street car while you were standing on the sidewalk before you started across the street? A. Yes, I seen it about a half a block away.

''Q. And you did not see it again until after the accident? A. Yes, sir.

''Q. You mean by that that you did not see it except the one time while you were on the sidewalk until after the accident? A. I seen it about the middle of the block, and then I didn't see it until it struck me.

''Q. That was the only time you looked for it, then, when you were standing on the sidewalk? A. Yes, sir, when I was standing on the sidewalk I looked both ways and I seen the car.

''Q. And that was the only time you looked toward the street car? A. Yes, sir.

Appellant offered no evidence but stood on its demurrer to plaintiff's evidence. In determining whether or not the court erred in overruling said demurrer, we are required to take plaintiff's favorable evidence as true, give him the benefit of every reasonable inference arising therefrom and arising from all the evidence, and disregard any evidence which contradicts the evidence favorable to plaintiff. Applying that rule we cannot say the trial court erred in holding that there was a case for the jury to decide.

We come now to the trial court's action with respect to instructions given and refused.

Appellant requested the court to give a separate withdrawal instruction as to each assignment of negligence in plaintiff's petition. The court refused all but the one relating to appellant's alleged failure to stop the street car when it could have seen plaintiff was likely to be trapped between the automobile and the street car.

If there was not sufficient evidence to support any one of the assignments of negligence which the court thus refused to withdraw, then the submission of the case to the jury on a damage instruction only, constituted reversible error. [Crossno v. Terminal R. Assn. of St. Louis (Mo.), 41 S. W. (2d) 796, 800; Hollensbee v. Pevely Dairy Co. (Mo. App.), 38 S. W. (2d) 273, 276; Willis v. Applebaum (Mo. App.), 26 S. W. (2d) 823.]

Among the instructions requested by appellant was one withdrawing the assignment of negligence wherein it was charged that appellant operated its street car at a high and excessive rate of speed. The court refused to give such instruction. We are of the opinion that this instruction should have been given. There is no evidence whatever in the record to show the speed of the street car, except

the evidence of the motorman who was called as a witness for plaintiff. He testified that he had stopped the street car on the west side of Thirteenth Street to discharge passengers, and that he started it in motion and proceeded at a rate of less than one mile per hour, for a distance of about ten feet, and again stopped it prior to the time the automobile of defendant Bernice Dailey came in contact with the street car.

Counsel for plaintiff, however, argues that the jury were not required to believe the evidence of the motorman in this respect, and insists that by a process of calculation the jury could have reached the conclusion, from plaintiff's testimony, that while plaintiff traveled a distance of twenty feet from the north curb of Cass Avenue to the point of collision, the street car came a distance of two hundred feet, which would make the speed of the street car ten times as fast as that of plaintiff, thus showing the street car to have traveled at a speed of thirty miles per hour. This argument fails to take into consideration the uncontradicted testimony of the motorman of the street car, and defendant Bernice Dailey, who were called as witnesses for plaintiff. They said that before the collision the street car had come to a complete stop and was standing still on the west side of Thirteenth Street, which, of course, referred to a time and a position after plaintiff saw it, "pretty far away." Plaintiff's own testimony cannot be said to contradict this testimony because plaintiff only saw the street car when it was two hundred feet away. He said he did not see it thereafter until he was struck by it. He, therefore, not only did not contradict the testimony of Bernice Dailey and the motorman in this respect, but his own testimony shows he could not. We, therefore, have a situation in which plaintiff's own individual testimony fails to show anything with respect to the speed of the street car, whereas, other testimony adduced by him and not contradicted by any other testimony in the case affirmatively shows a speed that was not excessive.

We are not dealing with a situation in which testimony of hostile witnesses called by plaintiff merely contradicts his own testimony. Nor is there anything to show prevarication by the witnesses thus called. On the contrary Bernice Dailey testified against herself when she said the street car was standing still on the west side of Thirteenth Street, and that her automobile struck plaintiff before he come in contact with the street car. The motorman's testimony was to the same effect. The mere fact that the motorman, as a witness for plaintiff, testified that the street car moved at a rate of less than one mile per hour, would not preclude plaintiff from having the benefit of other testimony showing a higher rate of speed had there been any other testimony on that point, but, having called the motorman as his witness, and having elicited from him testimony as to speed, plain-

tiff is not in a position to ask that such testimony be disregarded. This principle of law was aptly stated by Judge LAMM, as follows:

"If A put B on the stand and prove by him a certain state of facts, this does not preclude A from putting C, D or E on the stand and proving a different state of facts; but if A puts B on the stand as his only witness to prove a fact, and does prove it, then he is precluded from impeaching B, or from otherwise inviting the jury to disregard B's testimony. He may not avoid his dilemma in that way." [Rodan v. St. Louis Transit Co., 207 Mo. 392, 408, 105 S. W. 1061; see, also, Schroer v. Brooks, 204 Mo. App. 567, 585, 224 S. W. 531; Manchester Bank v. Harrington (Mo.), 199 S. W. 242, 249.]

There was no evidence to support the charge that appellant operated its street car at a high and excessive rate of speed, and in view of the fact that the case was submitted to the jury on a damage instruction only, the court committed reversible error in refusing to withdraw this assignment of negligence from the consideration of the jury, as requested by appellant.

We are also of the opinion that the court committed error in refusing to give the instruction requested by appellant withdrawing from the consideration of the jury the assignment of negligence charging that appellant failed to keep a watch ahead for pedestrians approaching the street car track. The only testimony on this point in the case was that of the motorman to the effect that he saw plaintiff standing on the northeast corner of Thirteenth and Cass Avenue, saw him start across the street, saw him step back to avoid the oncoming automobile, saw plaintiff after he was struck by the automobile, and saw him carried some distance to the point of impact between the automobile and the front of the street car. Plaintiff's own testimony as to whether the motorman watched ahead, does not in any manner contradict this testimony. Plaintiff's testimony merely shows that he saw the street car when it was "pretty far away" and did not see it thereafter until he was struck by it.

There is nothing in plaintiff's testimony from which it can be inferred that the motorman did not keep a watch, while on the contrary, the motorman's testimony, adduced, it must be remembered, by plaintiff, shows that he was keeping a watch all the time after he started his car. It was, therefore, error for the court to refuse the instruction requested. [Crossno v. Terminal R. Assn. of St. Louis (Mo.), 41 S. W. (2d) 796, 800; Hollensbee v. Pevely Dairy Co. (Mo. App.), 38 S. W. (2d) 273, 276.]

Appellant also assigns as error the action of the court in refusing to give its instructions withdrawing the assignments charging appellant with negligence under the humanitarian doctrine, and failure to sound a gong or other warning. While the evidence to support these two assignments cannot be said to be strong, we believe it was sufficient to warrant the court in submitting them to the jury. Plain-

tiff said he did not hear a gong sounded, and although there was testimony that he had on a stocking cap, we cannot infer from this that he could not have heard a gong sounded.

Furthermore, he testified positively that it was the street car that struck him, and there was testimony showing that as he crossed the street he was oblivious of the approach of the street car after it started from its stationary position on the west side of Thirteenth Street. This testimony, together with the motorman's testimony that the street car could be stopped within five feet going at the rate of one mile per hour, and that it moved ten feet, cannot be ignored.

Defendant Bernice Dailey did not appeal from the judgment herein and is, therefore, not entitled to a new trial. On the other hand, appellant is entitled to a new trial because of the errors which we have noted above. However, there can be but one final judgment in the cause, and a judgment against joint tort-feasors must be for a single amount and cannot be split up. There cannot be a judgment for different amounts against them for the same tort. [Barr v. Nafziger Baking Co. (Mo.), 41 S. W. (2d) 559, 564; Neal v. Curtis & Co. Mfg. Co. (Mo.), 41 S. W. (2d) 543, 558.]

If a jury at the new trial should hold appellant liable, and assess damages at a different amount than was assessed at the trial now under review, there would be judgments for different amounts against the two defendants in one tort action. Both such judgments could not stand. [Barr v. Nafziger Baking Co., supra.] To avoid the possibility of such complications, the judgment herein is reversed and the cause remanded for a new trial as to appellant St. Louis Public Service Company both as to liability and the amount of damages; and for a new trial as to defendant Bernice Dailey on the amount of damages only, the verdict as to defendant Bernice Dailey's liability to stand in force. *Becker, J.,* concurs; *Hostetter, P. J.,* not sitting.