Harvey DE LONG and Georgia DeLong,
Respondents,

v.

Gerald A. BROADSTON and Albert A. Bow-
ers, d/b/a All Surface Heating Company,
and Frank Willoughby, Appellants.

No. 22022.

Kansas City Court of Appeals.

Missouri.

Nov. 1, 1954.

whereby defendants agreed to install a gas burner in plaintiffs' steam boiler. Defendants authorized and directed the Willoughby Brothers to complete installation and adjustment of the burner. Plaintiffs sued defendants and the Willoughby Brothers, alleging breach of the contract and resulting damages to their apartment house. The action was dismissed as to one of the Willoughbys. Plaintiffs had a verdict and judgment against Broadston and Bowers and Frank Willoughby, in the sum of $3,900. Defendants moved for a new trial but, upon plaintiffs' remittitur of $400, the motion was overruled, and final judgment was entered for $3,500. Broadston and Bowers appealed.

It is urged that plaintiffs failed to make a submissible case because their evidence regarding the cause and extent of their damages was founded on conjecture and guess. In ruling this point we must view plaintiffs' evidence in the light most favorable to them, draw all reasonable inferences therefrom in their favor, and disregard defendants' evidence except as it may aid plaintiffs' case. Sowers v. Howard, 346 Mo. 10, 139 S.W.2d 897, 901; Burris v. Kansas City Public Service Company, Mo.App., 226 S.W.2d 743, 749. If the evidence is reasonably susceptible of two inferences, one favorable to plaintiff and the other unfavorable, and reasonable men may differ in their interpretation thereof, we are bound by the verdict of the jury.

Plaintiffs founded their action on a written contract executed by defendants Broadston and Bowers, whereby the latter agreed to install a gas burner equipped with automatic controls in plaintiffs' boiler, and to do same in a workmanlike manner. The contract was pleaded, was placed in evidence, and was not questioned in any way by defendants. It was dated September 30, 1950.

Mr. DeLong testified to the effect that plaintiffs purchased the property here involved in May, 1950; that, at that time, the plaster, paper, paint and floors of the four apartments in the building were in good condition, and remained in good condition until the occurrence hereinafter mentioned; that, on October 3, 1950, Mr. Mar-

Lewis Sanders, and McCann & Sanders, Kansas City, for appellants.

Rogers, Field & Gentry, James W. Benjamin, Ben L. Clardy, Kansas City, David J. Dixon, Platte City, for respondents.

SPERRY, Commissioner.

Plaintiffs, Harvey and Georgia DeLong, were the owners of an apartment house located at 425 Prospect, Kansas City, Missouri. They entered into a written contract with defendants, Broadston and Bowers, d/b/a All Surface Heating Company,

tin came out and installed a gas burner in the steam boiler which had, heretofore, been fired with coal; that, after the burner was installed, it was lighted but failed to heat the house; that, about a week later, witness reported the failure to get heat; that no controls were placed on the first burner but a thermostat was placed in an apartment; that, about November 1, the burner was removed because the tenants complained that they got no heat; that a Mr. Hammond installed a second burner, which was larger than the first; that it failed to heat the building; that, eventually, about December 7, Mr. Willoughby came, looked at the burner, and said a larger burner was needed, and more gas; that the next day, about 7:30 p. m., the Willoughby Brothers installed a burner; that they welded a blower onto the burner and had it going; that witness asked Mr. Willoughby when he would complete the job and he said he would be back in the morning to finish putting on controls; that witness said: "Are you going to leave that thing burning, like that, without any controls on it?"; that Willoughby said: "We will turn it down manually, so it will be safe"; that it would be "Okay"; that witness and his wife then left the basement while the Willoughbys were still there; that there was some steam in the boiler.

Mr. DeLong stated that, when he returned to the basement, at 10:00 the next morning, he found the boiler cold, the gas was not burning, and water was on the floor; that Mr. Willoughby came soon and told him that the boiler had burst. Witness said that the boiler was cracked in the upper half dome part; that the boiler was not cracked when he left the basement the night before; that, about a week later, he had Mr. Wells, a boiler man, look at the boiler; that he installed a new boiler; that the burner and old boiler were then in the same condition they were in on the Saturday morning that Willoughby was last there; that the old boiler was a total loss.

Mr. Wells stated that when he first saw the heating equipment there was a snap action valve, fastened wide open, on the burner, and no automatic controls hooked up; that this was a low pressure boiler, made to operate on not to exceed four pounds of steam; that the snap action valve was manually fixed in such a position that the gas would be on full force at all times, whether or not there was water in the boiler, and regardless of the steam pressure; that a hot water control will not operate on a steam boiler, and would not control the gas; that it would continue to generate steam and, if the boiler were half full of water, as Mr. DeLong stated that it was, it would take seven or eight hours to boil the water all out; that when he first saw the boiler it had two cracks, one crack from ten to twelve inches long; that the cracks were caused by the water being evaporated out of the boiler, and water seeping back into the boiler from the radiators and coming into contact with the "red hot" boiler; that, after the steam pressure had gotten somewhere above ten or twelve pounds, it would blow the pressure valves out of the radiators, permitting steam to go out into the rooms where the radiators were located. He stated that he installed a new steam boiler for a total cost of $485.

Plaintiffs produced the testimony of Mr. Reed, who stated that he had rented the entire house for a period of eight years prior to plaintiffs purchasing it; that it had been redecorated within about eighteen months prior to its purchase by the DeLongs; that the plaster, paper, paint and floors were in good condition; that the boiler was in good condition; that he moved from the house about a month or six weeks after plaintiffs bought the place.

Mr. Sumpter stated that he lived in one of the apartments in the house from September, 1950, until February, following; that on the night the trouble with the boiler occurred he was in his apartment, reading; that it became very hot; that steam began coming through the radiator safety valve and that he turned off the radiator; that this was about 8:00 or 8:30 p. m.; that after the steam escaped in the room of his apartment where the radiator was located, the paper came loose and bagged down from the ceiling near the radiator, but no damage occurred in the other rooms of his apartment.

Mr. DeLong further testified to the effect that, in every room of the house where there was a radiator, the paper was damaged and plaster came loose; that the floors were buckled and warped; that he had to put in temporary gas radiant heaters, at a cost of $159.25; that he paid defendants $252 for the burner that they were to have installed; that he lost much time looking after the apartment because of the failure of the burner to properly heat it, and lost all of his tenants for the same reason; that, altogether, three different burners were installed by defendants.

Mr. Phelps, a builder, testified to the effect that he inspected the house; that, in his judgment, there are 600 yards of loose plaster that should be replaced; that it had been wet or damp; that it would cost $1,200 to repair the plaster; that some of the floors were buckled and the cost of repair on them would be $150; that papering and painting would cost about $950.

Mr. Bowers stated that his firm sent the Willoughby Brothers out to plaintiffs' apartment with instructions to do whatever they deemed necessary in order to furnish heat; that they had full authority to do whatever they saw fit to do; that "We are glad to assume responsibility" for the acts of the Willoughby Brothers in connection with plaintiffs' heating system.

■ The above résumé of testimony will suffice for the purpose of ruling the objection to its sufficiency. From the testimony, if believed, the jury could have inferred that the Willoughbys left the gas burner operating full blast, locked open, and with no controls hooked up or operating; that all water in the boiler was evaporated and water from the radiators seeped onto the overheated dry metal of the boiler, causing it to crack; and that the overheated boiler produced an unusual amount of steam pressure, causing the safety valves in the radiators located in the rooms of the apartments to burst, as they are designed to do, permitting steam to escape into the room, thereby causing damage to the paper, paint, plaster, and floors. Maybach v. Falstaff Brewing Corporation, 359 Mo. 446, 222 S. W.2d 87, 90, 91. Defendants' motion for directed verdict was properly overruled.

■ It is also urged that the court erred in directing the jury that defendants Broadston and Bowers are liable for the acts and conduct of the Willoughby Brothers. This contention is based on the theory that the Willoughbys were independent contractors, for whose failure defendants are not liable. However, Mr. Bowers stated, on the witness stand, that his company assumed responsibility for the acts of the Willoughbys. Further "One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for bodily harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants." Restatement of the Law—Torts, Section 429, page 1150; Mahany v. Kansas City Rys. Co., Mo., 254 S.W. 16, 29 A.L.R. 817. In 29 A.L.R. 736, 737, it is stated that "The rule is clear beyond argument that one who undertakes *by contract* to do for another a given thing cannot excuse himself to the other for a faulty performance, or a failure to perform, by showing that he has engaged another to perform in his place and that the fault or failure is that of another or independent contractor." (Emphasis ours.) See Missouri cases cited at page 749 of 29 A.L.R.

■ Defendants contend that the court erred in giving plaintiffs' Instruction No. 2, as follows:

"The court instructs the jury that if you find the issues in favor of the plaintiffs and against the defendants, it then becomes your duty to assess damages in favor of the plaintiff and against the defendants in such a reasonable amount as you may find and believe from the evidence will reasonably and justly compensate and pay plaintiffs for all damages which you may find and believe from the evidence directly resulted to them from the negligence, if any, of the defendants."

"The measure of damages is a question of law and not of fact and, when the court instructs upon that question, it should do so properly and not leave the matter submitted to guess and conjecture. Defendant is under no duty to offer an instruction attempting to cure the error in plaintiff's instruction." Ingram v. Great Lakes Pipeline Company, Mo.App., 153 S.W.2d 547, 555. In the above decision it is also stated that the measure of damages in cases involving real property is the difference in value of the property immediately before and immediately after the damages were inflicted. There is no doubt that is the rule. Schaefer v. Frazier-Davis Construction Company, Mo.App., 125 S.W.2d 897, 898, 899.

In Gulf, M. & O. R. Co. v. Smith-Brennan Pile Company, Mo.App., 223 S.W.2d 100, 103, 104, the above rule was reaffirmed and discussed. The court recognized that "Where the amount of damage is insignificant, as compared to the value of the property as a whole and involves only a small part thereof, there is an exception to the above general rule"; but the court further stated that, before plaintiff could rely solely on evidence of costs of repair, there should be a showing of the comparative insignificance of the damage to bring the case within the exception to the rule.

In the case at bar no evidence was offered touching the value of the real estate involved, either before or after the alleged damage was suffered. The only evidence touching the extent of the damage was that concerning cost of repairs. It was stated in the Schaefer case, above mentioned, that as there was a total absence of evidence of market value, the judgment was, therefore, clearly excessive, but that there was no basis for adjustment by remittitur.

Rosen v. Kroger Grocery and Baking Company, Mo.App., 5 S.W.2d 649, was a case where the discharge from defendant's ice box had damaged the walls of plaintiff's building. It was held that it was prejudicial error to permit recovery for the cost of repairs, since there was no evidence whatever as to the value of the building, either before or after the injury.

In the instant case, since there was no evidence offered or received touching the market value of the building, either before or after the damage was incurred, no measure of damage instruction could have been submitted upon that theory. It was improper to submit on the theory of the cost of repairs because it was not shown that the damage was comparatively insignificant, considering the total value of the building.

There was evidence in this case that may not be properly considered by a jury in another trial under a proper measure of damage instruction upon either of the theories above mentioned. It is suggested that, if the case be retried, the scope of the evidence be limited in accordance with the law as herein declared, and the issues made by the pleadings.

The judgment should be reversed and the cause remanded with directions to hold in abeyance the verdict against defendants Broadston, Bowers and Frank Willoughby as to their liability, and to try the issue of the amount of damages consistent herewith, and then to enter judgment against all of said defendants for the amount of such damages, if any, so found. Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S.W.2d 543; Barr v. Nafziger Baking Company, 328 Mo. 423, 41 S.W.2d 559, and Polkowski v. St. Louis Public Service Company, 229 Mo.App. 24, 68 S.W.2d 884.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court and the judgment is hereby reversed and the cause remanded with directions to hold in abeyance the verdict against defendants Broadston, Bowers and Frank Willoughby as to their liability, and to try the issue of the amount of damages consistent herewith, and then to enter judgment against all of said defendants for the amount of such damages, if any, so found.

All concur.