J. Robert TULL and June R. Tull, Husband and Wife, & Perry V. Ewing, Jr. and Helen S. Ewing, Husband and Wife, Respondents,

v.

HOUSING AUTHORITY OF the CITY OF COLUMBIA, Missouri, Appellant.

No. 36237.

Missouri Court of Appeals, Western District.

May 28, 1985.

Cullen Cline, Butcher, Cline, Mallory & Covington, Columbia, for appellant.

Raymond C. Lewis, Jr., Gena J. Trueblood, Smith, Lewis & Beckett, Columbia, for respondents.

Before LOWENSTEIN, P.J., and SHANGLER and SOMERVILLE, JJ.

LOWENSTEIN, Judge.

The plaintiff-respondents (hereafter referred to as owners) comprised a partnership which leased a 26 acre tract of land and 150 mobile homes to the defendant-appellant Columbia Housing Authority (CHA) for a low-income housing project in Columbia, Missouri. The lease, which ran from 1969 to 1979, provided that CHA was responsible for any damage done to the trailers by the sub-tenants beyond normal wear and tear, which was defined as

> "the natural wearing process of the physical parts or components of a mobile home unit and the premises when in use by the occupants, but not to mean, willful, malicious or intentional abuse or destruction to any parts of the components of said dwelling unit."

This breach of contract case covers approximately 100 of those mobile homes which were returned to owners with extensive damage which included such items as holes or dents in the coaches, damage to metal doors and wall panels, ceiling water damage, broken and filthy refrigerators, tenant debris, floor stains, animal excrement, illegal electrical connections, vanities off the walls and broken screens and windows. There was evidence as to extensive water line damage due to freeze-ups when

heating bills were not paid. The testimony and pictures admitted in evidence show the persons to whom the CHA rented these units allowed considerable damage to be done. After the lease the owners removed 50 truckloads of debris which included car parts and broken glass and furniture. The basic thrust of CHA's appeal is the amount of the judgment was too high—it does not contest liability. Cf. Gulf, M. & O.R. Co. v. Smith-Brennan Pile Co., 223 S.W.2d 100, 102 (Mo.App.1949). After trial to the court, a judgment was entered for the owners for $162,276.15 for diminution in value of 97 units, $8,260.60 for hauling debris and $19,575.04 for attorney fees allowed under the lease. The latter two awards are not in contention on appeal.

■ CHA first contends that the trial court used the wrong measure of damages. The court used diminution in value as the measure of damages, rather than using the cost of repairs as was urged by CHA. Both parties agree that the general rule for damage to real or personal property is the diminution in value test, i.e., the difference between the fair market value before and after the event causing the damage. City of Kennett v. Akers, 564 S.W.2d 41, 50 (Mo. banc 1978); Groves v. State Farm Mutual Auto Ins. Co., 540 S.W.2d 39, 43 (Mo. banc 1976); DeLisle v. Cape Mutual Ins. Co., 675 S.W.2d 97 (Mo.App.1984); Lustig v. U.M.C. Industries, Inc., 637 S.W.2d 55, 58 (Mo.App.1982); DeArmon v. City of St. Louis, 525 S.W.2d 795, 800 (Mo.App.1975).

■ An exception to the general rule is the cost of repair test which may be used when the property can be restored to its former condition at a cost less than the diminution in value. DeLisle, supra, at 103. CHA urges that this test would have been the proper measure of damages, citing DeArmon, supra, case and Wenzlick v. Franz, 288 S.W. 946 (Mo.App.1926), for the proposition that this test is to be applied if cost of repair is any figure less than the

diminution in value. However, the Wenzlick court used the cost of repair as the measure of damages since no evidence of fair market value before or after was presented. See also, Smith v. Norman, 586 S.W.2d 84, 87 (Mo.App.1979). It was held in DeLong v. Broadston, 272 S.W.2d 493, 497 (Mo.App.1954), the diminution of value test is only appropriate when evidence is received touching the market value of the real estate both before and after the damage. In that case there was no such evidence, only the repair cost was offered. This approach was rejected since the predicate for repairs as the measure, was to establish an exception to the before and after value rule, and then to submit the repairs exception, if applicable. Id. The court further held that the cost of repairs test is improper unless the damage is comparatively insignificant considering the total value of the building. Id.

■ The DeArmon case does not support CHA's argument either. That opinion reiterated, "that the cost-of-repair test is an exception to be used only where the amount of the damage is insignificant as compared to the value of the property." 525 S.W.2d at 800. The court further said the diminution test is used "without hesitation in circumstances that suggest a very high restoration cost." Id. Contra, Casada v. Hamby Excavating Co., Inc., 575 S.W.2d 851, 858 (Mo.App.1978). In surveying the cases which applied the cost of repair test, it is clear this application is limited to situations where repairs amount to a small percent of the diminution in value. See, Kirst v. Clarkson Construction Co., 395 S.W.2d 487, 493 (Mo.App. 1965) (repairs equalled $315, diminution equalled $5,500 i.e. about 6%); Jack L. Baker Cos. v. Pasley Mfg. & Distrib. Co., 413 S.W.2d 268, 273 (Mo.1967) (repairs equalled $3,000, diminution equalled $13,380 i.e. about 22%); Beaty v. N.W. Electric Power Cooperative, 296 S.W.2d 921 (Mo.App. 1956) (repairs equalled $500, diminution equalled $1500 to $5000 i.e. 10–30%). The

most recent case allowed the highest ratio. In *Delisle v. Cape Mut. Ins. Co., supra*, the diminution in value evidence offered by the plaintiff was $40,000; repairs were estimated by the defendant to be at least $19,-832.02 and by the plaintiff as $40,000. In the court-tried case the judgment was for $26,264.58. This compromise between the two repair estimates was about 60% of the diminution in value. It is important to note that the plaintiff did not appeal this award, so the *measure* of damages applied was not contested. The defendant who appealed alleged the award should have been limited to the lesser of the two repair estimates, but the appellate court deferred to the trial's award since it was within the range of evidence.

CHA estimated the total cost of repair of the trailers at $17,513.47. The owners estimated the cost of repair for each mobile home at $1,200 although this figure did not include the damage to water lines, water heaters and furnaces. The total cost of repairs according to the owners would have been something in excess of $114,000. (Evidence was that two of the hundred units had no damage, and three units had been destroyed and paid for at an earlier date). This figure is at least 70% of the diminution in value, and the unincluded water line damages could raise the percentage even higher. While the cost of repairs is competent evidence to be considered in determining the damage suffered, *Misch v. C.B. Contracting Company*, 394 S.W.2d 98, 101 (Mo.App.1965), it is not binding on the trial court when the repair cost is clearly a significant percent of the total value of the property. *DeArmon*, 525 S.W.2d at 800. As a matter of law, the trial court did not err in applying the diminution in value test under the present facts.

CHA next contends that the trial court erred in fixing the "before" fair market value of the mobile homes at $4,200. The owners had two qualified experts plus one of the owners testify as to 1979 fair market value. The estimates ranged from between $4,200, $4,500 and $5,000. Although the owners had paid $4,200 per unit in 1969, the testimony in evidence indicated inflation had offset depreciation over the ten years. The evidence presented by CHA as to fair market value was that the two apparently undamaged mobile homes had sold for $3,200 in 1979. Also the owners had received $3,250 in insurance proceeds for a unit destroyed by fire in 1975. The court in *Hounihan v. State Farm M.A.I. Co. of Bloomington, Ill.*, 441 S.W.2d 58, 62 (Mo.App.1969), held that proof of a single sale is not sufficient to establish a market value. While CHA's evidence can be weighed by the trial court, it in no way binds the court on valuing the other 97 mobile homes.

CHA complains the trial court relied solely on opinion evidence, but an owner may always testify regarding his property's value, *Lustig*, 637 S.W.2d at 61; *Casada*, 575 S.W.2d at 854. CHA did not contest the other experts' qualifications. Furthermore, the trial court used the lowest of the three estimates presented by the owners. Under the review of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), there was substantial evidence to support the trial court's calculations. CHA's additional unsupported contentions, including an allegation of error in allowing the owners to amend their petition to increase the prayer, are without merit and are denied.

The owners have requested additional attorneys' fees be awarded for this appeal in the amount of $5,328.75, plus $335.61 in expenses. The lease between the owners and CHA provided in the case of a breach the party adjudged to be in default would be required to pay all costs, expenses of trial and attorneys' fees. As stated earlier the trial court awarded a sum that has not been contested. CHA did not file any motion in opposition to the present requested allowance, and at oral argument conceded the requested amount was rea-

sonable. Therefore, an allowance of $5,664.36 in attorney's fees and expenses is granted to the owners. Their request for damages for frivolous appeal under Rule 84.19 is denied.

The judgment of the trial court is affirmed. The owners are also given judgment, for which execution shall issue, for $5,664.36 representing attorney's fees and expenses on appeal.

All concur.