Kevin K. STEGE and Kathleen M. Stege, his wife, Counterclaimants/Respondents/Cross–Appellants,

v.

Eugene I. HOFFMAN and Jo Ann HOFFMAN, et al., Counterclaim Defendants/Appellants/Cross–Respondents.

Nos. 59505, 59548 and 59654.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 17, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Jan. 14, 1992.

Application to Transfer Denied
Feb. 25, 1992.

Briegel, Baylard, Patane and Arand, P.C., David L. Baylard and Robert F. Garza, Union, for counterclaim defendants/appellants/cross-respondents.

Kohn, Shands, Elbert, Gianoulakis & Giljum, Peter C. Woods, St. Louis, for counterclaimants/respondents/cross-appellants.

KAROHL, Judge.

On October 6, 1988, counterclaimants, Kevin K. Stege and Kathleen M. Stege, his wife, entered into a contract to purchase a lot in a subdivision in Franklin County, Missouri, owned by Eugene I. Hoffman and Jo Ann Hoffman, his wife. The Steges and Eugene I. Hoffman signed the contract. The sale contract recited a total consideration of $123,677.21 for the purchase of the lot and construction of a house. The price of the lot, $17,500, was listed with other charges. Problems developed during construction. On June 30, 1989, Steges fired the general contractor. The house was never completed.

The Hoffmans filed the present lawsuit against the Steges with a petition alleging trespass on an adjoining lot and breach of contract regarding the construction of the house. Steges counterclaimed charging the Hoffmans with fraudulent inducement, breach of contract, breach of implied warranty of fitness and negligence. A real estate company joined the Hoffmans in their petition and was a target of a count in the counterclaim. All claims were settled except Steges' claims for breach of contract and implied warranty against the Hoffmans. The court realigned the parties and held a jury trial on Steges' claims for breach. It submitted both breach claims to the jury which returned a verdict for $35,500 for breach of contract and $15,211 for breach of warranty. The court entered judgment only on the breach of contract verdict. We consider cross-appeals.

On appeal the Hoffmans claim three points on error. The trial court erred in: (1) submitting to the jury any claim against Jo Ann Hoffman because there was no proof she was a party to the construction agreement; (2) refusing to reduce the jury award on the breach of contract verdict by some amount paid to the Steges in a prior partial settlement with third parties; and (3) finding the Steges sufficiently proved damages. Steges' cross-appeal raises the question of whether the court erred in not entering judgment on both verdicts, a total of $50,711. We affirm.

I

Jo Ann Hoffman contends she was merely a bookkeeper for her husband, not a general contractor and therefore, the court should have granted a directed verdict at the close of the Steges' evidence or at the close of all the evidence. She primarily relies upon the undisputed fact that on October 6, 1988, the Steges signed the sale contract as purchasers and only Eugene I. Hoffman signed as seller, of a lot on which a house was to be constructed. Accordingly, she claims she could not be liable for breach of contract because she was not a party and not bound thereby. She relies on *Reichert v. Jerry Reece, Inc.*, 504 S.W.2d 182, 185 (Mo.App.1973) and Vol. 17A C.J.S. Contracts, § 520. The general rule that a stranger to a contract is not liable thereon does not apply to the facts. This claim is without merit.

A signature is not always essential to the binding force of an agreement and whether an unsigned writing constitutes a binding contract depends upon the parties' intention. *Robinson v. Powers*, 777 S.W.2d 675, 679 (Mo.App.1989). There was substantial evidence from which the jury could find the parties, including Jo Ann Hoffman, intended she would join her husband to sell a jointly owned lot and act as a general contractor with her husband in the construction of a house on the lot sold.

First, Eugene I. and Jo Ann Hoffman jointly owned the land being developed by them as a subdivision. They acknowledged Eugene I. Hoffman had authority to sign his wife's name in connection with the development of the subdivision and did so on at least four prior transactions.

Second, the contract executed by the Steges and signed only by Eugene I. Hoffman on October 6, 1988, was for more than the sale of Lot 21. The contract price included a base price of $94,218.79, other charges regarding construction of the house, and a stated value of $17,500 for the lot, for a total agreed price of $123,667.21. Mr. Hoffman could not perform all of the agreements contained in the sale contract without the participation of his wife in the transaction which included both the sale of a lot and the construction of a house. The contract called for closing after completion of the house.

Third, in addition to the sale contract a construction escrow agreement to accommodate the construction was agreed to on November 7, 1988. Both Jo Ann Hoffman and Eugene I. Hoffman signed the escrow contract as "contractor." Further, during construction Jo Ann Hoffman joined Eugene I. Hoffman on written communications to the Steges and referred to their activities as contractor using the pronoun "we." Jo Ann Hoffman also signed vouchers for payment of construction expenses on the escrow account as "contractor."

Fourth, throughout the lawsuit Jo Ann Hoffman acknowledged she was a contractor. The original petition was filed by Eugene I. and Jo Ann Hoffman and alleged: "On or about October 6, 1988, Defendants [Steges] entered into a contract with the *Plaintiffs Hoffmans* whereby the *Plaintiffs Hoffmans* agreed to construct for the Defendants a residence on Lot 21 of High Meadows Subdivision for a price of One Hundred Twenty–Three Thousand Six Hundred Sixty–Seven and 21/100 Dollars ($123,667.21)." (Our emphasis). The petition relying on the contract was sufficient to constitute an admission that Eugene I. Hoffman's signature was, by his agency, the act of his wife as well. *See Freeman Contracting Co. v. Lefferdink*, 419 S.W.2d 266, 273 (Mo.App.1967). In addition to the pleadings, Jo Ann Hoffman answered interrogatories submitted by the Steges with admissions she was a general contractor in the completion of four homes just prior to beginning work on the Steges' house. She was fired as a general contractor along with her husband by the Steges. The court did not err in submitting the Steges' claims against Jo Ann Hoffman together with Eugene I. Hoffman.

II

The Hoffmans next claim the court erred in not reducing the jury award on the breach of contract claim by an amount the Steges recovered in prior settlements. The ruling was not error.

There is simply no evidence in the record the Steges either received a settlement or were compensated by the real estate company or the Hoffmans for part of the damages claimed as a result of breach of contract. There is no legal dispute that the Hoffmans are entitled to only one recovery. But there is no evidence they have recovered by settlement any of the damages submitted on the breach of contract claims. The claims of fraud were dismissed and not tried. If the Steges recovered damages on a different theory, the Hoffmans were not entitled to credit against the verdict.

The Hoffmans rely on § 490.715 RSMo Cum.Supp.1990. That section provides an advance payment or partial payment of damages predicated on possible tort liability shall be deducted from any final judgment rendered in favor of an injured person. We find application of that section unsupported by the record and not applicable. There is no record of any amounts paid in settlement, or, if paid, for which claims. If there was a settlement of the fraud claims resulting in a dismissal, any sums received were not advance payments or partial settlement of the breach of contract claims.

III

■ The Hoffmans' final claim of error is the Steges failed to make a submissible case on the issue of damages. They contend the Steges "offered no evidence whatsoever as to the diminution of market value of the property as contracted for versus as constructed" and the presentation of evidence "solely on the costs of repairing the house" was insufficient. The issue is

whether evidence of the cost of completion of the house and the cost of correcting errors in partial construction is sufficient to submit the breach of contract claim. We find it is.

The Hoffmans began construction contemporaneously with the sale contract. The escrow agreement provided the house would be completed on May 7, 1989. During construction numerous and serious problems developed. There was evidence the rear basement wall had to be removed and replaced, the drainage system was flawed resulting in a water condition in the basement and pressure against the front foundation wall, the septic system was improperly installed, and the atrium attached to the back of the house was improperly installed. These problems and others were detected by government building inspectors with the result a permanent occupancy permit could not be granted. On June 30, 1989, the Steges "fired" the Hoffmans. There was evidence of the cost of correcting the construction defect problems. In addition, the Steges testified they sustained resulting damages because the Hoffmans failed to timely complete the construction. These damages included the added expenses for maintaining a prior residence and their obligations on borrowed money used to purchase the new house.

 The law is well settled where the contractor has partially performed the work promised, the owner's damages are the cost of completion. *Edmonds v. Stratton*, 457 S.W.2d 228, 233 (Mo.App.1970). Where the contractor's performance is defective, the owner's damages are either the cost of completion according to the contract terms, *Samuels v. Illinois Fire Ins. Co.*, 354 S.W.2d 352, 357 (Mo.App.1961), or the difference between the value of the home as constructed and the value it should have if constructed according to the specification. *Kahn v. Prahl*, 414 S.W.2d 269, 282 (Mo.1967). The cost of completion is to be used as the measure of damages unless this would be unreasonably wasteful; i.e. economic waste. *Forsythe v. Starnes*, 554 S.W.2d 100, 109 (Mo.App.1977).

In the present case, the total cost for the construction of the house was in evidence in the sale contract. The jury was informed the agreed price for purchase of the house and lot was $123,667.21. The Steges' evidence of the cost to repair defective construction and complete the house was approximately $35,500. They offered evidence of additional damages sustained because the house was not timely constructed, resulting damages from owning one house and the expenses of another.

The authorities relied on by the Hoffmans stand for the proposition "that the measure of damage for injury to real property is the diminution in value test, i.e. the difference between the fair market value before and after the event causing the damage." *Sheridan v. Sunset Pools of St. Louis*, 750 S.W.2d 639, 642 (Mo.App.1988). Hoffmans rely on *Sheridan*, *Tull v. Housing Auth. of the City of Columbia*, 691 S.W.2d 940 (Mo.App.1985); *Ribando v. Sullivan*, 588 S.W.2d 120 (Mo.App.1979); *DeLong v. Broadston*, 272 S.W.2d 493 (Mo. App.1954). None of these cases involved damages for completion of construction under a contract which included an agreed price and a completed product.

In *DeLong*, the court remanded for a new trial on the issue of damages only because plaintiff property owners failed to offer evidence in support of their claim defendants improperly installed a gas burner. The plaintiffs sought damages when the heating system failed and the house damaged. The court found no evidence touching market value of the building either before or after the damage was incurred and held: "It was improper to submit on the theory of the cost of repairs because it was not shown that the damage was comparatively insignificant, considering the total value of the building." *Id.* at 497. The claimed damages were not related to cost of completion of a contract.

In *Tull v. Housing Auth. of the City of Columbia*, 691 S.W.2d at 940, plaintiff Tull leased land and mobile homes to defendant. Defendant agreed to be responsible for any damage done to the mobile homes beyond normal wear and tear. The suit was for

damages done by sub-tenants. The court submitted damages based on evidence of diminution of value, although defendant claimed cost of repair was the proper measure. The court recognized proof of cost of repair is insufficient unless such damages are comparatively insignificant considering total value of real estate. *Id.* at 942. The court affirmed a judgment based only on evidence of diminution of value. It found the total cost of repair would have been in excess of $114,000 where the verdict and judgment was $162,276.15 "a significant percent of the total value of the property." *Id* at 943.

*Ribando v. Sullivan,* 588 S.W.2d at 120 involved purchaser's claim for damages for breach of warranty of an implied warranty where defendants sold plaintiffs a lot and agreed to construct a house. The house was completed but plaintiffs claimed defects resulting from a breach of defendant builders' common law liability for an implied warranty that the contractor will perform the construction in a reasonably workmanlike manner. In such cases plaintiffs "are entitled to whichever is lower, as between the cost of repair and the diminution of value (diminution meaning the difference in value of the house if it had been constructed properly compared with its actual value as constructed)". *Id.* at 124. There was evidence of diminution of value and of cost of repair. However, the evidence of diminution of value was not related to the date of completion but a date five years thereafter. For that reason it was found not probative on the issue of diminution of value. *Id.* The court remanded for a new trial on the issues of damages only.

*Sheridan v. Sunset Pools of St. Louis, Inc.,* 750 S.W.2d at 639, involved a suit for damages to real estate resulting from defendant's negligent maintenance of property owners' swimming pool. The claim was for damage to real property but it was not based upon the theory of breach of contract. We remanded for a new trial on the issue of damages because there was no evidence of diminution in value, a predicate for cost of repair evidence which may be submitted on tort claims only if substantially less than the diminution of value. *Id.* at 642.

None of the reviewed cases cited by Hoffmans involved submission of a cause of action for breach of contract to complete construction under the contract which included the agreed completion price. *Sheridan* involved damages for negligence. *Tull* involved a breach of a guaranty contract, not a construction contract, and plaintiffs submitted the case solely on proof of diminution of value. The court found no error because there was evidence cost of repair was a significant amount in comparison to the diminution of value. The theory relied on in *Ribando* was implied breach of warranty, not breach of contract for failure to complete construction. The house was completed by defendants. *DeLong* involved damages to an existing completed structure resulting from negligent performance of a repair.

We find damages for failure of a building contractor to complete construction of a house was properly noted in *Samuels,* 354 S.W.2d at 357:

> From the foregoing, it necessarily follows that plaintiffs' damages in this case are to be gauged by the measure of damages applicable in building contract cases wherein a defendant contractor has breached his contract. That measure is clearly defined by general authority and Missouri courts. Corbin on Contracts, Sec. 1089, states the rule as follows: "For a breach by defective construction, whether it is partial or total, and for a total breach by refusal and failure to complete the work, the injured party can get a judgment for damages measured by the reasonable cost of reconstruction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste (destruction of usable property). Sometimes the defects in a structure cannot physically be remedied without tearing down and rebuilding."

This rule has particular application where the total value of the lot and house was agreed to by the parties. If the Hoffmans had completed the house as agreed, togeth-

er the house and lot would have had an agreed value of $123,000. From the evidence the jury could have found the Steges acquired a lot worth $17,500 and an unusable partially constructed building. The cost of completion of the contract, which included repair and replacement of defective construction, was shown by evidence which would have supported a verdict of $35,500. On these facts we find the Steges made a submissible case on breach of contract damages for failure to complete the house as agreed.

### CROSS–APPEAL

Steges contend in their cross-appeal the trial court erred, as a matter of law, by entering judgment only on the jury verdict in the amount of $35,500. Steges argue judgment should be entered on both verdicts in conformity with the manner in which the jury returned its "unanimous verdicts finding in favor of plaintiffs, against both defendants on both counts in the sum of $35,500 on Breach of Contract Claim and $15,211 on Implied Warranty of Inhabitability."

During the trial the court considered the two theories to be in the alternative. It announced the claims were to be submitted in the alternative "as the damages for each count were the same." Steges' attorney indicated to the court in chambers during the instructional conference the verdict directors were being submitted to the jury in the alternative. The court so informed the jury saying: "The plaintiffs [Steges] are submitting their case on two separate theories of liability, and they will not—they do not expect to recover twice, but they are asking that they—that you consider each of those claims that they have made."

Therefore, as the court and the parties agreed to this plan of alternate submission, the Steges cannot now complain. Point denied.

The judgment is affirmed.

SMITH, P.J., and AHRENS, J., concur.