**William R. and Kathryn E. WASSON, Appellants,**

v.

**Noland E. and Cheryl L.A. SCHUBERT, Respondents.**

**No. WD 54090.**

Missouri Court of Appeals, Western District.

March 10, 1998.

David A. Vorbeck, Kansas City, for Appellants.

Judith A. Sharp, Liberty, for Respondents.

Before ULRICH, C.J., P.J., and
HOWARD and RIEDERER, JJ.

HOWARD, Judge:

This is an appeal from the trial court's judgment in favor of Respondents Noland and Cheryl Schubert at the close of Appellants' evidence. Appellants William and Kathryn Wasson claim the trial court erred in entering judgment for Respondents as a matter of law on Appellants' breach of contract and fraudulent misrepresentation claims on a contract for the sale of real property. Appellants also claim the trial court erred in finding that they did not present evidence of damages.

## Facts

Noland and Cheryl Schubert bought the property at 8919 East 56th Terrace in Raytown, Missouri ("the property") in August 1988. In December 1988, the Schuberts discovered a water leak in the basement of the house on the property. In January 1989, the Schuberts determined that the water leak was from a crack in the foundation wall in the basement. The crack in the basement wall and the water leak were behind the stairs leading from the garage of the house to the basement. That same month, the Schuberts attempted to repair the water leak from the crack in the basement foundation wall by applying "UGL Waterproofer" to the wall. They replaced the steps and carpeting covering the crack and leak.

In May or June 1993, the Schuberts discovered another water leak in the basement of the house, near a drainpipe in the basement wall in the furnace room. The Schuberts attempted to fix this leak by applying UGL to the wall in May or June 1993. Their attempts were unsuccessful. The water leak continued at that location until the Schuberts sold the property to William and Kathryn Wasson in 1995.

On June 29, 1995, the Schuberts executed a form of "Sellers' Disclosure—Statement of Condition Addendum," ("sellers' disclosure") by which the Schuberts agreed to disclose to

the Wassons all material defects, conditions and facts known to them that might materially affect the value of the property. In the sellers' disclosure, the Schuberts disclosed only two items of defect or conditions that might affect the value of the property, at paragraphs eight and nine, relating to "structural items" and "basements and crawl spaces."

As for the structural items, in response to the question "Are there now or has there ever been any cracks or flaws in the walls or foundation?" the Schuberts marked "No." In response to the question "Is there now or has there even been any water leakage in the house?" the Schuberts marked "Yes." The Schuberts stated that they had attempted repairs to stop the leaks. Although the question required them to explain the repair efforts in detail, including the location, extent, date, and name of the person who did the repair, the Schuberts merely described the efforts as "heavy rains 93 (fill dirt & gutter. change)."

As for the basements and crawl spaces, the Schuberts were required to disclose whether there had ever been any water leakage, accumulation, or dampness within the basement. The Schuberts responded that there had been, and described the condition as "from 93 rains." The Schuberts further stated that they had attempted repairs to control the water or dampness problem in the basement themselves, and described the repair as "furnace room—minor—5/93."

On July 21, 1995, the Schuberts and the Wassons executed a Residential Real Estate Sale Contract ("contract") for the Wassons to buy the property for the price of $78,000. Paragraph eight of the contract stated that the contract was not effective until the Schuberts completed and the Wassons signed the attached "Statement of Condition Addendum" for the property.

On July 22, 1995, the Wassons signed the Buyers' Acknowledgment and Agreement portion of the sellers' disclosure. The sellers' disclosure specifically provided that "THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THE AGREEMENT BETWEEN THE SELLER AND THE BUYER."

The Schuberts did not disclose the December 1988 water leak and January 1989 attempted repairs in the basement foundation wall behind the stairs to the Wassons when the Schuberts provided the sellers' disclosure. The Schuberts did not disclose to the Wassons that the water leak at the drainpipe in the basement wall in the furnace room continued to leak from the May 1993 attempted repairs up until the Schuberts sold the property to the Wassons.

The Wassons visually inspected the house and property before signing the contract to buy the property, and they saw no water leaks or cracks in the basement walls. The Wassons closed on the sale of the property in September 1995 and took possession of the property on about October 1, 1995. At no time prior to closing on the sale of the property did the Wassons conduct or have anyone else conduct a structural inspection of the property.

The Wassons have experienced water leaks in the basement of the property periodically since approximately January 1996. The Wassons determined that water leaks through cracks in the basement foundation walls in the furnace room and behind the stairs leading from the garage to the basement. The water leaks that the Wassons have experienced are at the same locations that the Schuberts attempted repairs in January 1989 and May 1993. The leaks occur every time it rains or snow melts.

At the close of plaintiffs' evidence, the trial court ruled, as a matter of law, that the Schuberts' representations about the property condition in the sellers' disclosure could not support the Wassons' claim that the Schuberts breached the contract, because the sellers' disclosure was dated one day after the contract. The trial court also ruled that the Schuberts' representations in the sellers' disclosure did not support the Wassons' claim for fraudulent misrepresentation because the sellers' disclosure was dated after the contract. The trial court also ruled that the Wassons had not presented evidence of damages. The Wassons appealed the trial court's judgment.

## Standard of Review

In this case, the court entered judgment for the defendants at the close of plaintiffs' case for failure to make a submissible case. The standard of review in a case where the judge has granted judgment for the defendants at the close of plaintiffs' case provides the plaintiffs with all favorable inferences, rejects all unfavorable inferences, and disregards defendants' evidence unless it aids plaintiffs' case. *Morris v. Perkins Chevrolet, Inc.,* 663 S.W.2d 785, 787 (Mo.App. W.D. 1984).

## Breach of Contract

The first point on appeal is that the trial court erred in ruling for the Schuberts as a matter of law, on the basis that the sellers' disclosure was dated one day after the contract, because 1) the trial court's ruling was against the weight of the evidence and erroneously declared the law; and 2) the evidence showed, without contradiction, that the contract between the Wassons and the Schuberts incorporated the sellers' disclosure by reference, and that the Schuberts failed to disclose defects in the property and conditions materially affecting the value of the property.

▮ We review the evidence to determine only whether the Schuberts made a submissible case on their breach of contract claim. To make a submissible case, substantial evidence must support every fact essential to liability and establish every element necessary to recovery. *Howe v. ALD Services, Inc.,* 941 S.W.2d 645, 650 (Mo.App. E.D.1997). In order to make a submissible case of breach of contract, the complaining party must establish the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach. *Howe, id.; Slone v. Purina Mills, Inc.,* 927 S.W.2d 358, 367 (Mo.App. W.D.1996).

▮ We find that the Wassons made a submissible breach of contract claim. The contract and the sellers' disclosure were admitted in evidence at trial, and the Schuberts do not argue that the contract was not valid or that the disclosure was not a part of the contract. The trial court found that the sellers' disclosure could not be part of the contract because it was dated by the Wassons one day after the contract was signed. We disagree. It is well established that matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in *haec verba. Jim Carlson Const., Inc. v. Bailey,* 769 S.W.2d 480, 481 (Mo.App. W.D.1989); *Three-O-Three Investments, Inc. v. Moffitt,* 622 S.W.2d 736, 738 (Mo.App. W.D.1981). The sellers' disclosure was an addendum to the contract, and paragraph eight of the contract specifically states that the contract would not be effective "until seller completes and buyer signs the attached Statement of Condition Addendum for the property." Therefore, the fact that the Wassons signed the sellers' disclosure one day after the parties signed the contract simply means that the contract was not effective until the date the Wassons signed the sellers' disclosure.

▮ As for the Schuberts' obligations and whether they breached their obligations, the sellers' disclosure states that "[s]eller agrees to disclose to buyer all material defects, conditions and facts known to seller which may materially affect the value of the property." Nowhere on the sellers' disclosure did the Schuberts mention the crack in the basement foundation wall behind the stairs, which they admit caused leaks in the past. The Schuberts claim that they did not disclose the existence of that crack because they did not believe it was material. However, the plain language of the sellers' disclosure clearly required the Schuberts to disclose all cracks that, to their knowledge, had ever existed in the foundation walls, regardless of whether they believed such cracks were material. The Schuberts also failed to mention that the leak in the furnace room continued. Mr. Schubert's explanation for this was that his answer, "heavy rains 93 (fill dirt and gutter change)," was meant to convey that there were still leaks during heavy rains, and that the fill dirt and gutter changes were done in 1993. However, this is not at all clear from the face of the disclosure, and the Wassons

have certainly made a submissible case that this answer was misleading.

■ The next question we consider is whether the Wassons made a submissible case on the issue of damages. The Wassons and the Schuberts disagree about the appropriate measure of damages. The Wassons argue that the appropriate measure of damages is the diminution of value of the property, measured by the difference between the value of the property as the Schuberts represented and its actual value at the time of the sale. The Schuberts argue the appropriate measure of damages is the difference in fair market value of the property before and after injury, or the cost of restoring the property, whichever is the lesser amount. The Schuberts also contend, apparently as an alternative to the first measure of damages, that the Wassons failed to prove cost of repair, which they contend is the proper measure of damages where the alleged damages are repairable or not permanent.

■ The particular facts and circumstances of each case dictate which measure of damages is appropriate. *Gee v. Payne,* 939 S.W.2d 383, 385 (Mo.App. W.D.1997); *Business Men's Assur. Co. of America v. Graham,* 891 S.W.2d 438, 450 (Mo.App.W.D. 1994). The general rule in Missouri for damages to real property is the diminution in value test, which is calculated by determining the difference between the fair market value before and after the event causing the damage. *Business Men's Assur. Co. of America,* 891 S.W.2d at 449; *Tull v. Housing Authority of City of Columbia,* 691 S.W.2d 940, 942 (Mo.App. W.D.1985). The cost of repair test, an exception to the general rule, may be used when the cost of restoration is less than the diminution in value. *Id.* Application of the cost of repair test is clearly limited to situations where repairs are only a small percentage of the diminution in value. *Id.*

■ A homeowner is qualified to express an opinion upon the diminution in value in his property. *St. Louis County v. Taylor–Morley, Inc.,* 923 S.W.2d 507, 511 (Mo.App. E.D.1996). Such an expression of opinion is admissible and of probative value. *Id.* It is to be expected that an owner's opinion, like

that of an expert, will be based to some degree on indirect or hearsay knowledge, but will still be admissible. *See Wood River Pipeline Co. v. Sommer,* 757 S.W.2d 265, 267 (Mo.App. E.D.1988).

The only evidence of monetary damages that resulted from the Schuberts' misrepresentations was the testimony of the Wassons. The Schuberts contend that the Wassons' testimony was based on estimates they had received on the cost of repair. The Schuberts objected to the evidence of the estimates as hearsay. The trial court sustained the objection to the direct evidence of the estimates, but overruled the objection to Mr. Wasson's testimony, which was based, at least in part, on those estimates. On direct examination, Mr. Wasson testified about the property's value as follows:

Q. What is your opinion about the value of the house today?

A. I believe it's probably $10,000 less than it was due to the price of having to fix everything and the water damage that's in the basement.

\* \* \* \* \*

Q. Mr. Wasson, based on the estimates that you've obtained and your ownership of the house, do you have an opinion about the value of your house today with the water problems that you've experienced?

A. Yes.

Q. And what is the value of your house today?

A. Probably $68,000.

\* \* \* \* \*

On direct examination, Mrs. Wasson testified as follows:

Q. What do you believe your house is worth today with the water problems?

A. With the water problems, I wouldn't expect to pay more than $68,000 for it or be able to sell it for that. So, ten—roughly $10,000.

\* \* \* \* \*

Mr. Wasson's testimony seems to reflect a combination of the diminution of the value of

the property and the cost of repair. Mrs. Wasson's testimony, to which the Schuberts did not object, appears to reflect the diminution in value of the property.

In addition, Mr. and Mrs. Wasson testified that they paid $78,000 for the property. The Schuberts argue that the Wassons' testimony as to the property's purchase price is not competent evidence of the property's fair market value. We disagree. Fair market value is the price at which the property could be sold by a willing seller to a buyer who is under no compulsion to buy. *Business Men's Assur. Co. of America*, 891 S.W.2d at 450. In *Sharaga v. Auto Owners Mut. Ins. Co.*, 831 S.W.2d 248, 251 (Mo.App. W.D.1992), a house was damaged by fire in 1986. The owner based his opinion of his property's pre-fire value on uncontradicted evidence of the price he paid for the house in 1979, the improvements that he had made to the house and the cost of those improvements. *Id.* at 252. We found that the homeowner's testimony constituted substantial evidence of the house's value before the fire. *Id.* In this case, the purchase price constitutes substantial evidence of the property's fair market value in the condition that the Schuberts represented the property to be in.

As the Schuberts point out, the trial court is not bound to accept the Wassons' estimate of the value of their property. *In re Marriage of Stuart*, 805 S.W.2d 309, 312 (Mo. App. E.D.1991). However, their testimony does present a submissible case on the issue of damages, regardless of which measure of damages the court employed.

In any event, in contract cases, proof of the contract and its breach gives rise to nominal damages. *Gee*, 939 S.W.2d at 387. Therefore, on remand, if the Wassons prove the existence of a contract and a breach of the contract by the Schuberts, they will have made a submissible case on damages, regardless of whether they prove actual damages. *See id.*

### Fraudulent Misrepresentation

The second point on appeal is that the trial court erred in ruling in favor of the Schuberts and against the Wassons on the Wassons' claim of fraudulent misrepresentation because 1) the trial court's ruling was against the weight of the evidence and erroneously declared the law; and 2) the evidence showed, without contradiction, that the Schuberts admitted they had failed to disclose defects in the property and conditions materially affecting the value of the property, the Schuberts knew their disclosures to the Wassons were inaccurate and incomplete, the Schuberts intended for the Wassons to rely on the Schuberts' disclosures, the Wassons did not know the Schuberts' disclosures were false, the Wassons were entitled to and did rely on the Schuberts' misrepresentations about defects and the condition of the property, and the Wassons were damaged by the Schuberts' false representations and incomplete disclosures.

Again, we consider only whether the Wassons made a submissible claim of fraudulent misrepresentation. Generally, to make a submissible fraud claim, a plaintiff must establish the following elements: (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) the speaker's intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on it; and (9) injury. *State ex rel. PaineWebber, Inc. v. Voorhees*, 891 S.W.2d 126, 128 (Mo. banc 1995); *Martin v. McNeill*, 957 S.W.2d 360, 363 (Mo.App. W.D.1997); *Groothand v. Schlueter*, 949 S.W.2d 923, 927 (Mo.App. W.D.1997); *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 720 (Mo.App. W.D. 1995).

We find that the Wassons made a submissible fraud claim. They presented evidence that the Schuberts made a false representation to them on the sellers' disclosure by failing to reveal the existence of the crack in the wall under the basement stairs, the water leak from the crack, their repair attempt, and the fact that the leak in the furnace room continued up until the time they sold the property. The evidence, including photographs, of cracks and water damage resulting from the cracks is substan-

tial evidence that the Schuberts' failure to disclose the crack and the fact that the leak in the furnace room continued was material. In addition, the specific questions in the sellers' disclosure did not allow the Schuberts to pick and choose which leaks were material.

 There is no question that the Schuberts intended the Wassons to rely on the information in the sellers' disclosure. At trial, Mr. Schubert conceded this point. As to the hearer's ignorance of the representation's falsity, Mr. and Mrs. Wasson testified that they did not know about the cracks in the furnace room and under the stairs when they purchased the house. They testified that the Schuberts' personal belongings were at least partially blocking their view of the cracks when they visually inspected the property and one of the cracks was behind stairs, carpet, and paneling. In addition, the Wassons did not conduct a structural inspection of the property. Therefore, they did not have the benefit of a professional opinion on the condition of the property.

 As to the hearer's reliance on the truth of the representation, the Wassons agreed in the contract to pay $78,000 for the house. The next day, when they signed the sellers' disclosure and by so doing made the contract effective, they affirmed that nothing in the disclosure had made them decide that the house was worth less than $78,000. The Wassons testified that they believed their property was worth $10,000 less than the purchase price in its actual condition. Therefore, it can reasonably be inferred that they would not have paid $78,000 for the property had they known of the cracks and the water damage. Furthermore, the Wassons testified that they relied on the statements in the disclosure in making their decision not to conduct a structural inspection of the property.

 The Wassons have also established that they had a right to rely on the information in the sellers' disclosure. The general rule is that a party who undertakes his own investigation is not allowed to rely on the misrepresentations of another. *Groothand*, 949 S.W.2d at 929. However, there are three exceptions to this rule. *Id.* The

first exception is that when the party making the investigation makes only a partial investigation and relies on the misrepresentations as well as the investigation, the party may maintain an action for fraud. *Id.* The first exception applies in this case because the Wassons never conducted a structural inspection. Therefore, they only partially inspected the house, even though they viewed the house themselves and had a mechanical inspection done. *See id.*

 The second exception is that where facts are peculiarly within the knowledge of the party making the representations, the buyer may rely on such representations if he does not stand on "equal footing" with the seller and the truth is difficult for the buyer to ascertain. *Id.* at 930. Here, the parties did not stand on equal footing because the Schuberts actually lived in the house when they executed the sellers' disclosure. Usually a seller who has lived in a property will have knowledge superior to a buyer's knowledge concerning the property's condition. *Id.* In addition, the crack behind the stairs, which the Schuberts did not disclose, would have been extremely difficult for the Wassons to discover.

 The third exception is that if a seller makes a distinct and specific representation, the buyer has the right to rely on that representation, even if the parties stand on equal footing or have equal knowledge or means of information. *Id.* This is true even if the purchasers had the opportunity and were fully aware of their right to have a structural inspection performed on the house, but chose not to. *Id.* The Schuberts made distinct and specific representations about the condition of the property in the sellers' disclosure. Therefore, there is no merit to the Schuberts' argument that the Wassons could not rely on the representations in the sellers' disclosure because the Wassons were informed of their right to conduct a structural inspection.

 As for damages, the appropriate measure of damages in a fraudulent misrepresentation case is the difference between the actual value of the property at the time of making the contract and the value that it

would have possessed if the representation had been true. *Stephenson v. First Missouri Corp.,* 861 S.W.2d 651, 659 (Mo.App. W.D.1993); *Kincaid Enterprises, Inc. v. Porter,* 812 S.W.2d 892, 900 (Mo.App. W.D. 1991). As previously discussed in our analysis of the breach of contract claim, the Wassons have made a submissible claim on this measure of damages.

The judgment is reversed and the cause remanded for a new trial.

All concur.