Roy T. BOYER, Respondent,

v.

SINCLAIR & RUSH, INC., Appellant.

No. ED 78689.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 15, 2002.

Elizabeth C. Carver, Kenneth J. Mallin, Michelle L. Gravel, St. Louis, MO, for appellant.

David M. Duree, St. Louis, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Sinclair & Rush ("Seller") appeals the judgment in favor of Roy Boyer ("Buyer") in Seller's unlawful detainer action and the judgment awarding Buyer $177,000 on his breach of contract claim and $1 on his wrongful eviction claim. Buyer cross-appeals. Buyer also appeals the dismissal of a petition filed after the judgment in which he alleged post-judgment damages resulting from continued wrongful eviction. All appeals have been consolidated. We affirm in part and reverse in part.

The facts, viewed in a light most favorable to the trial court's judgment, are as follows. Seller owned four parcels of land on South Broadway in the City of St. Louis. The four parcels are in four separate city blocks. The first three block-sized parcels are contiguous and consist of a building, a parking lot and a grassy vacant lot. Together, these three parcels bear the street address of 6916 South Broadway ("6916"). The fourth block-sized parcel is situated three city blocks away from the other three parcels. It contains a building and bears the street address of 7514 South Broadway ("7514").

Buyer saw a "for sale" sign at 7514 and called the realtors, CB Commercial Realtors. John Wright ("Wright") answered the call on behalf of CB Commercial Realtors. Wright and Gary Sahrmann ("Sahrmann"), Seller's executive vice president, showed Buyer 7514. Wright and Sahrmann quoted a price between $200,000 and $300,000 for the property.[1] After the inspection of 7514, Wright and Sahrmann said they had another building, 6916, which consisted of three parcels as described above. At some point, Wright faxed a letter to Buyer stating that it was unlikely that Seller would sell 7514 separately from the other parcels.

After inspecting all four parcels Buyer had a series of discussions with Seller about buying 6916 and arranged for financing for those three parcels. He received a partial draft of a proposed Agreement in October 1996, after which Seller suggested a meeting to determine if the parties could reach an agreement. A meeting was scheduled for December 1996.

At the meeting, Buyer reviewed the proposed Agreement which recited at the outset that Seller was the owner of the real estate having the street address of 6916 South Broadway "which real estate is described on *Exhibit A* attached hereto." Exhibit A described all four parcels, including all three parcels connected with 6916 and the fourth parcel connected with 7514. While looking at Exhibit A and pointing it out to Sahrmann, Buyer said, "It's all four parcels on this contract?" and Sahrmann said, "Yes." The Agreement also provided Buyer with the right to lease approximately 8,000 square feet of the building at 6916 prior to closing at a rent of 1,333.00 per month and that any rent paid would be credited against the sale price of $160,000. Buyer signed the

---

1. Much of this evidence was vigorously disputed by Seller at trial. As required by the standard of review, however, we view the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict. *M.C. v. Yeargin*, 11 S.W.3d 604, 612 (Mo.App.1999).

Agreement, with handwritten changes, to reflect that Buyer, not National Fixture, was the purchaser.[2] In January 1997, he moved into 6916 as provided for in the lease provisions of the Agreement.

Buyer complained about the slow process of closing on the sale. At one point, he was advised that he needed a survey. In July 1997, about seven months after the contract was signed, Seller faxed another copy of Exhibit A to Buyer's surveyor with a cover note stating, "Attached description of property being purchased by Roy Boyer." The identical copy of Exhibit A also described all four parcels.

There were provisions in the Agreement for environmental clean-up of 6916. Wright sent Buyer periodic updates on the status of the clean-up. In November 1997, the Missouri Department of Natural Resources issued a "No Further Action Letter" to Seller, who forwarded this letter to Buyer.

Meanwhile, after completing the survey, Buyer again attempted to close on the sale but could not get a commitment on closing. At that time, he retained an attorney, who sent Seller a letter in December 1997, demanding a closing on all four parcels. Seller still refused to schedule a closing, but on January 27, 1998, sent a letter scheduling a closing for January 30, 1998, three days later. Seller advised Buyer that if he failed to close on 6916 on January 30, he would be in default under the Agreement and this would cause Buyer's right to possession of the leased premises to terminate pursuant to the lease provisions of the Agreement. Seller further advised Buyer that if he did default and did not vacate the premises by January 31, 1998, he would owe double rent on the leased premises. Buyer did not attend the closing because Seller had informed Buyer that only three parcels would be transferred if he came to the closing.

In February 1998, Seller filed an unlawful detainer action against Buyer, seeking possession of 6916. Seller alleged that Buyer unlawfully continued to occupy the property after Seller notified him of termination of the lease provisions in the Agreement. Buyer continued to send Seller a check every month but Seller did not present any of the checks for payment after January 1998.

In August 1998, Seller moved for summary judgment on the unlawful detainer action. In September 1998, Buyer filed his own action against Seller, alleging that Seller had breached the Agreement, and sought alternatively damages and specific performance of the Agreement. Seller's summary judgment motion was denied. Buyer also filed a *lis pendens* against both 6916 and 7514.

In June 2000, Seller padlocked the leased premises at 6916. Seller also renewed its motion for summary judgment, which the court denied shortly before the trial commenced in July 2000. Also prior to trial, the court granted Buyer leave to amend his petition to add a wrongful eviction claim after Seller padlocked the leased premises. Buyer then dismissed his claim for specific performance of the Agreement.

The court submitted Buyer's breach of contract claim and Buyer's wrongful eviction claim to the jury. The court determined that the jury should consider Seller's unlawful detainer claim only if it determined that Buyer breached the sales contract and instructed the jury accordingly. The jury returned a verdict for Buyer on the breach of contract claim and the wrongful eviction claim, awarding $177,000 and $1 respectively. On July 14, 2000, the court entered

**2.** Buyer is the sole owner and shareholder of National Fixture.

judgment on the verdict in favor of Buyer and against Seller on Buyer's breach of contract and wrongful eviction claims. On July 17, 2000, the court entered an amended judgment in favor of Buyer and against Seller on Seller's unlawful detainer action. Both sides appealed.

After the verdict and judgments Buyer filed a petition (the third lawsuit) alleging that Seller continued to lock Buyer and National Fixture out of the leased premises. Buyer requested post-judgment damages resulting from continued wrongful eviction. The trial court dismissed this petition finding that it failed to state a claim, was *res judicata,* and improperly split a cause of action. Buyer's appeal of that judgment was consolidated with the cross-appeals.

Seller's first contention is that the trial court erred in denying its motions for directed verdict and for j.n.o.v. on Buyer's claim for breach of contract because the sales contract is unambiguous in that it expressly provided for the purchase of 6916 only and the agreement is not susceptible of more than one interpretation.

■■■ The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. *Edgewater Health Care Inc. v. Health Systems Management, Inc.,* 752 S.W.2d 860, 865 (Mo.App.1988). Where there is no ambiguity in the contract the intentions of the parties are to be ascertained from the language of the contract and nothing else and it is the duty of the court to state its clear meaning. *Id.* "Determination of an ambiguity is a question of law for the court to decide." *Jackson v. Christian Salvesen Holdings, Inc.,* 978 S.W.2d 377, 383 (Mo.App.1998) (citing *Alack v. Vic Tanny Intern. of Missouri, Inc.,* 923 S.W.2d 330, 337 (Mo. banc 1996)).

■■■ "A contract is not rendered ambiguous by the fact that the parties do not agree upon the proper construction to be given it." *Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896, 901 (Mo. banc 1990) (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973)). In determining whether contract language is ambiguous, we must look at the context of the entire agreement and determine if the language, given its plain and ordinary meaning as understood by a reasonable person, is reasonably susceptible to more than one construction. *Jackson,* 978 S.W.2d at 383. An interpretation of a contract which involves unreasonable results when a probable or reasonable construction can be adopted will be rejected. *Id.* If it is determined that an ambiguity exists, it is then for the trier of fact, using extrinsic evidence, to resolve the ambiguity. *Edgewater Health Care Inc.,* 752 S.W.2d at 865.

The Purchase and Sales Agreement contains several relevant provisions. The beginning of the contract states: "WHEREAS, Seller is the owner of the real estate located in the City of St. Louis, Missouri having the street address of 6916 S. Broadway, St. Louis, Missouri 63111, which real estate is described on *Exhibit A* attached hereto...." Another portion of the contract, under section 4.1(c), "Conditions to the Buyer's Obligations," provides as follows:

(c) Buyer shall have reviewed and approved in Buyer's sole discretion an "as built" survey of the Real Property bearing a reasonably current certification date, which survey shall verify the location of the Real Property, shall verify the legal description on *Exhibit A* attached hereto as the legal description of the Real Property (or show any corrections thereto), and shall show the location of improvements and easements.

Therefore, two places in the contract refer to Exhibit A as the legal description of the real property for sale. Exhibit A is titled "Description of Land" and the first sentence of the description says that "[t]he land referred to in this commitment is situated in the State of Missouri, City of St. Louis and is described as follows ..." Exhibit A then proceeds to describe the three parcels the parties agree are included in 6916 and the fourth parcel at 7514. Finally, section 8.8, entitled *Entire Agreement,* provides that "[t]his Agreement, together with all the Exhibits attached hereto and incorporated by reference herein, constitutes the entire undertaking between the parties hereto, and supersedes any and all prior agreements, arrangements and understandings between the parties."

Seller argues that the Agreement was unambiguous in favor of Seller and left nothing for the jury to construe because the first "Whereas" clause on the first page of the Agreement provided that the property at 6916 was the subject of the transaction. Seller further argues that the Agreement only states that the real estate with the street address 6916 is described on Exhibit A, and that it does not state that all of the real estate described on Exhibit A is included in the parties' transaction. We disagree.

■ While the beginning of Agreement states that the land for sale has the street address of 6916 South Broadway, another part of the Agreement, section 4.1(c) refers to Exhibit A as the legal description of the real property at issue. Furthermore, the description in Exhibit A does not distinguish between 6916 and 7514. It merely states that the land in the commitment is described as follows, and then describes four parcels. Considering the language of the Agreement as a whole, it could reasonably mean that 6916 and only 6916 is for sale or it could mean that the

land which is the subject of the Purchase Sales Agreement is described in Exhibit A. *See Jackson,* 978 S.W.2d at 383.

We conclude that the Agreement is ambiguous and that the trial court did not err in denying Seller's motions for directed verdict and for j.n.o.v. on the grounds that the Agreement is unambiguous. Point denied.

Seller's second point is that even if the Agreement is ambiguous, the trial court erred in denying Seller's motions for directed verdict and for j.n.o.v. on Buyer's breach of contract because any ambiguity must be resolved in favor of Seller. Seller further claims that Buyer did not submit substantial evidence that the parties had agreed to the purchase and sale of both 6916 and 7514. Seller asserts that the parties' negotiations only concerned 6916 and that the interpretation of the Agreement proffered by Buyer is unreasonable as a matter of law. We disagree.

■ The standard of review for the denial of j.n.o.v. is essentially the same as for review of denial of a motion for directed verdict. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 818 (Mo. banc 2000). We view the evidence and reasonable inferences therefrom in the light most favorable to the verdict. *Yeargin,* 11 S.W.3d at 612. We disregard any evidence that is unfavorable to the verdict. *Id.* A directed verdict or j.n.o.v. for the defendant is only appropriate if the plaintiff fails to make a submissible case. *Balke v. Central Missouri Elec. Cooperative,* 966 S.W.2d 15, 20 (Mo.App.1997).

■ In order to make a submissible case for breach of contract, substantial evidence must support every fact essential to liability and establish every element necessary to recovery. *Wasson v. Schubert,* 964 S.W.2d 520, 524 (Mo.App.1998). The complaining party must establish the

existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach. *Id.*

■ It is undisputed that a valid contract existed. Buyer submitted evidence that could support a finding that the contract included all four parcels, thus indicating that Seller breached its agreement, thereby violating Buyer's rights under the contract and causing him damage. Buyer originally looked at 7514 and was quoted a price for it. Wright faxed him a letter saying that it was unlikely that Seller would sell 7514 separate from 6916. Exhibit A reflects that all four parcels were included in the sale. When signing the contract, Buyer pointed to Exhibit A and said "It's all four parcels on this contract?" and Sahrmann, Seller's executive vice president, said, "Yes." While Seller submitted evidence that the contract only included the three parcels of 6916, we disregard the evidence that is unfavorable to the verdict. *Yeargin,* 11 S.W.3d at 612.

Having determined that the contract was ambiguous, we conclude that Buyer made a submissible case on his breach of contract claim. As the jury was free to believe Buyer's evidence and disbelieve Seller's, the trial court did not err in denying Seller's requests for a directed verdict and j.n.o.v. Point denied.

Seller's third point on appeal is that the trial court erred in overruling Seller's objections to Instruction No. 7 and denying Seller's motion for a new trial because the instruction was defective and prejudicial in that it was not readily understandable by the jury and it did not properly hypothesize the essential propositions of fact to be found by the jury. Seller claims that the instruction should have required the jury to find that both 6916 and 7514 were the subject of the Agreement rather than the

jury being required to find that "all four parcels of real estate described in the evidence" were the subject of the Agreement.

■ Instruction No. 7, which was a modified Missouri Approved Instruction ("MAI") 26.06, provided:

Your verdict must be for plaintiff if you believe:

First, plaintiff and defendant entered into an agreement whereby plaintiff agreed to buy and defendant agreed to sell plaintiff all four parcels of real estate described in the evidence, and

Second, defendant refused to transfer the four parcels of real estate described in Exhibit A to the contract, and

Third, because of said failure, defendant's contract obligations were not performed, and

Fourth, plaintiff was thereby damaged.

When reviewing the propriety of an instruction, we must review the evidence "in the light most favorable to the submission of the instruction, and a party is entitled to an instruction upon any theory supported by the evidence." *Kim v. Conway & Forty, Inc.,* 772 S.W.2d 723, 727 (Mo.App. 1989) (quoting *Hopkins v. Goose Creek Land Co. Inc.,* 673 S.W.2d 465, 467 (Mo. App.1984)). When an MAI has been modified, we must determine whether it follows the substantive law and can be readily understood by the jury. *P.S. v. Psychiatric Coverage, Ltd.,* 887 S.W.2d 622, 626 (Mo.App.1994).

■ Seller objects to the descriptive use of the land for sale as parcels instead of using street addresses. Seller claims that this renders the instruction too confusing for the jury because street addresses are much more commonly used to refer to property than are legal descriptions and would be better understood by the average

juror. However, as Buyer points out, Sahrmann testified as follows:

Q. In December of 1997, did Mr. Boyer, through my office, send you a letter demanding a closing on the real estate contract?

A. Yes.

Q. And did that letter demand a closing on all four parcels?

A. Yes, it did.

Q. On Exhibit A?

A. Yes.

\* \* \*

Q. And from that point forward was it continuously and always the position of Sinclair and Rush that it would not come to a closing and transfer all four parcels?

A. Exactly.

Q. All right. So if Mr. Boyer would come to a closing, when you gave him notice, you were only going to give him three parcels. Is that correct?

A. That was our contract. That is correct.

We conclude that sufficient evidence exists in the record to support the submission of Instruction No. 7. Through Sahrmann's testimony, the jury would have understood the property at stake in the Agreement without the necessity of using the street addresses. Point denied.

Seller's fourth contention is that the trial court erred in denying its motion for directed verdict and j.n.o.v. on Count III of Buyer's petition because Buyer originally characterized it as a conversion claim and because Buyer failed to offer any competent evidence of damages. Buyer claims

in his cross-appeal that the trial court erred and/or abused its discretion by excluding his proffered evidence of actual damages in support of his wrongful eviction claim, thereby entitling him to a new trial on the issue of actual damages. Buyer argues that he had an assignment of the claims of National Fixture Company resulting from the unlawful lockout and that he should have been able to proffer evidence of lost income by National Fixture.

██ The admission or exclusion of evidence is a matter of trial court discretion. *IMR Corp. v. Hemphill,* 926 S.W.2d 542, 546 (Mo.App.1996). Our review is limited to an abuse of discretion standard. *Still v. Ahnemann,* 984 S.W.2d 568, 572 (Mo.App. 1999). A ruling within the trial court's discretion is presumed correct and the appellant bears the burden of showing the trial court abused its discretion and that they have been prejudiced by the abuse. *Hemphill,* 926 S.W.2d at 546. Judicial discretion is abused when the court's judgment is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicates a lack of careful consideration. *Shelton v. Shelton,* 29 S.W.3d 400, 403 (Mo.App.2000).

The trial court concluded that Buyer as an individual was named on the lease, not National Fixture, which neither party disputed during trial.[3] Therefore, Buyer could not rely on damages suffered by National Fixture to prove his wrongful eviction claim because National Fixture did not have standing to sue for wrongful eviction. As Seller points out, the trial court's analysis is supported by this court's decision in *Spencer's River Roads Bowling*

---

**3.** The original Agreement had National Fixture named as the contracting party; however, upon signing the Agreement, Buyer scratched out National Fixture and replaced it with his own name.

*Lanes, Inc. v. Unico Management Co.,* 615 S.W.2d 121 (Mo.App.1981).

Spencer's River Roads Bowling Lanes, a Missouri corporation that operated a bowling alley, filed a petition for injunctive relief contending that the defendant landlord had improperly sought to invoke the remedy of common law forfeiture to terminate the plaintiff's leasehold due to non-payment of rent for the alley. *Id.* at 124. However, the named lessee on the lease in question was Spencer's Elmwood Plaza Bowling Lanes, a Wisconsin corporation, and Spencer's River Roads had never been substituted in as lessee or sublessee. *Id.*

This court affirmed the trial court's denial of injunctive relief and its order requiring delivery of possession of the premises to the defendant landlord and held that Spencer's River Roads had no standing to bring an action questioning the validity of the landlord's termination of the lease. *Id.* This was true even though the corporation had been occupying the alley and paying rent under the lease for over 17 years. *Id.* This court noted that "[n]o act on the part of the Wisconsin corporate lessee ever indicated that substitution had been made. No act of the lessor ever indicated it acknowledged the Missouri corporation as lessee." *Id.* The court then held the following:

> Under Supreme Court Rule 52.01, a civil action must be prosecuted in the name of the real party in interest. The purpose of this rule has been held to enable those who are interested in the subject matter of the suit and entitled to the benefits of the litigation to be those who maintain the action. And so to warrant standing as a party, the prospective plaintiff must have some actual and justiciable interest susceptible of protection through litigation.... Lack of standing on the part of plaintiff alone

is therefore sufficient to sustain the trial court's judgment.

*Id.*

■ We similarly find no abuse of discretion in denying evidence of National Fixture's lost profits because National Fixture was not named on the lease. The only evidence Buyer attempted to submit of his damages was the lost profits of National Fixture. Other than that, when he was asked if the lock-out caused him to sustain any personally, his response was, "yes, it has." We conclude that Buyer did not proffer sufficient evidence of damages and that the trial court should have directed a verdict in favor of Seller. Therefore, we reverse the judgment in favor of Buyer on his wrongful eviction claim.

Seller's fifth point is that the trial court erred in denying its motion for directed verdict and for j.n.o.v. or for new trial on its unlawful detainer claim against Buyer because Seller properly terminated the lease provisions of the Agreement after Buyer defaulted under the Agreement and did not vacate the premises after the termination of the lease.

The trial court determined that the jury should only consider Seller's unlawful detainer claim (Claim C) if they determined that Buyer breached the sales contract. The jury reached its verdict for Buyer on the breach of contract claim (Claim A) and Boyer's wrongful eviction claim (Claim B) on Friday, July 14, 2000. The court entered judgment that day on Claims A and B. The following Monday, July 17, 2000, the court amended the judgment, entering judgment in favor of Buyer on Claim C.

■ Buyer claims that Seller only appealed the judgment on July 14, and did not appeal from the judgment entered on July 17 because its notice of appeal makes no reference to the July 17 judgment. Seller claims that the July 17 amendment constitutes a nunc pro tunc order that changed only the record, not the judgment

itself. The Missouri Supreme Court has held:

> The party seeking to show that an order is an order nunc pro tunc must show that the original judgment entry did not accurately reflect the court's actual judgment and that the subsequent order merely caused the record to conform to the true judicial determination of the parties' rights. In other words, the subsequent order must do nothing more than correct a clerical error. To constitute an order nunc pro tunc, the order cannot correct anything that resulted from the exercise of judicial discretion because any such change constitutes a change in the court's judgment. Additionally, as has been long established, the clerical error must be discernible from the record.

*Pirtle v. Cook,* 956 S.W.2d 235, 243 (Mo. banc 1997) (citations omitted).

The trial court noted in the amendment to judgment that the jury was instructed to consider Claim C only if they found in favor of Seller on the breach of contract claims submitted to the jury in Claim A. As a result of the jury finding in favor of Buyer on Claim A, the court entered judgment against Seller on Claim C. We conclude that the trial court was merely amending the judgment to conform to the true judicial determination of the parties' rights and that there was no exercise of judicial discretion. Therefore, Seller's appeal on this point was proper.

We have reviewed the record and have determined that this point is without merit. The breach of contract claim was properly submitted to the jury and the jury found in favor of Buyer. Therefore, the trial court did not err in denying Seller's motion for directed verdict and for j.n.o.v. or a new trial on its unlawful detainer claim. Point denied.

We now address Buyer's remaining points in his cross-appeal. Buyer's first contention is that the trial court erred by denying Buyer's motions for directed verdict, for j.n.o.v. and/or to amend the judgment to increase the actual damage award. Buyer abandoned this claim during oral argument and we need not consider it further.

We have already addressed Buyer's second point. Buyer's third point is that the trial court abused its discretion in refusing to admit evidence that Seller had previously lost its motion for summary judgment on its unlawful detainer claim because such evidence was relevant to Buyer's claim for punitive damages in conjunction with his wrongful eviction claim. Buyer's fourth point is that the trial court abused its discretion in refusing to submit Buyer's claim for punitive damages. As we have determined that Buyer did not make a submissible case on his wrongful eviction claim, we need not consider these points and they are denied.

■ We now address Buyer's single point in his separate appeal. He argues that the trial court erred in dismissing his post-judgment lawsuit in which he alleged that Seller continued to lock him out of the leased premises. We conclude that the trial court did not err in dismissing this lawsuit because by accepting damages rather than pursuing a claim for specific performance, Buyer lost any right to possession of the premises. Point denied.

In conclusion, we reverse the trial court's judgment in favor of Buyer on his wrongful eviction claim. In all other respects, the judgments are affirmed.

SHERRI B. SULLIVAN, P.J., Concurs.

LAWRENCE E. MOONEY, J., Concurs.