Wanda BROWN, Respondent,

v.

Brent BENNETT, et al., Appellants.

No. WD 62959.

Missouri Court of Appeals,
Western District.

June 22, 2004.

Danieal H. Miller, Columbia, MO, for Appellant.

Bruce H. Beckett, Columbia, MO, for Respondent.

Before LOWENSTEIN, P.J., EDWIN H. SMITH and HOWARD, JJ.

HAROLD L. LOWENSTEIN, Judge.

Brent and Angela Bennett appeal a judgment in a court-tried case awarding Wanda Brown $17,825 in compensatory and $10,000 in punitive damages in her fraud action against the Bennetts. The judgment is affirmed.

## I. Facts

The Bennetts, who were in the home construction business, sold Brown their house in Columbia, Missouri. Brown had no expertise about real estate or the home construction business. The closing took place on April 20, 2001. In the sales contract, the Bennetts stated, "SELLER has no knowledge of . . . the existence of past uncorrected defects or problems with the property" and were asked to disclose any "[s]ettling, flooding, drainage, grading, or soil problems," to which they answered, "No." Brown read the contract before signing it.

Both statements were false, and the Bennetts knew they were false. The house's backyard was prone to flooding when it rained, because of flawed yard grading by the subdivision developer. The flawed grading caused runoff from fourteen lots to drain into the Bennetts' backyard. The developer was supposed to install three swales to handle the runoff, but had only installed one.

The Bennetts had previously complained to the City of Columbia about the flooding. At one point, Mrs. Bennett told the City that her "backyard [was] completely flooded, almost got into house." Mrs. Bennett demanded that the City do something soon. The City said the pooling was normal, that it would take at least a year just to develop a plan to deal with it, and that doing so was not a priority.

In their dealings with Brown and her real estate agent, the Bennetts said nothing about the flooding. Before and after signing the contract, Brown inspected the property several times. Her experienced real estate broker also inspected the property, as did a professional inspector Brown hired. None of them saw any pooling in the backyard. Brown learned of the pooling problem a few weeks after closing. As a result of the pooling, Brown was unable to plant a flower garden in the affected area, it was difficult to mow the lawn, and the yard was useless as a playground for her young relatives.

Brown filed this fraud action against the Bennetts. After a bench trial, it was established that Brown's house in its current condition is worth $140,000, but with a normal backyard, $163,000. The cost to fix the flooding problem was disputed. Mr. Bennett testified that regrading the existing swale, at a cost of $220, would solve the problem. When the Bennetts owned the property, Columbia's storm water manager recommended a different kind of repair. An engineer Brown hired recommended the same repair suggested by

the City and estimated that it would cost $17,825.

The trial court entered judgment in favor of Brown, awarding her $17,825 in compensatory and $10,000 in punitive damages.

## II. ANALYSIS

■ The Bennetts have raised five points on appeal. In a court-tried case, this court must affirm the judgment unless it wasn't supported by substantial evidence, it was against weight of the evidence, or the trial court either misapplied or misinterpreted the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The Bennetts' first point is that because the conditions that caused the flooding in the backyard—namely, the poor grading and the presence of only one swale—were open and obvious, Brown's fraud claim was deficient as a matter of law. Fraud requires proof that it was reasonable for the plaintiff to rely on the defendant's misrepresentation. *Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 813 (Mo.App.2002). *See also Rhodes Eng'g Co. v. Pub. Water Supply Dist. No. 1 of Holt County*, 128 S.W.3d 550, 567 (Mo.App.2004) ("right to rely"). Misrepresentations regarding patent defects cannot give rise to liability for fraud. *Groothand v. Schlueter*, 949 S.W.2d 923, 929 (Mo.App. 1997).

■ The single flaw in this point is that Brown did not sue the Bennetts for misrepresentation regarding the poor landscaping. She sued the Bennetts for their misrepresentation that the property did not have any "[s]ettling, flooding, drainage, grading, or soil problems." Thus, the relevant question is whether the flooding was patent, not whether the cause of the flooding was patent. The trial court's conclusion that the flooding was not patently obvious is supported by the evidence.[1]

This is not to deny that in certain circumstances knowledge of the cause of a defect is tantamount to knowledge of the defect itself. Consider, for instance, land located in a windy desert. (The example is the Bennetts'.) The buyer cannot sue the seller for misrepresentation regarding accumulation of sand on the property, even though when the buyer inspected the property before closing, there was no sand on it. In the hypothetical, it is blatantly obvious the wind will blow sand on the property; whereas in this case, it is not obvious to the layman that the poor landscaping of the developer would cause flooding. The misrepresented defect in this case was not open and obvious. Brown inspected the property (both before and after entering into the sales contract), as did her broker and the professional inspector she hired. None saw any flooding.[2]

■ In their second point, the Bennetts contend that Brown did not have the

---

**1.** The Bennetts cite *Mobley v. Copeland*, 828 S.W.2d 717 (Mo.App.1992), for the proposition that a defect is patent if it is discoverable by the use of reasonable care. *Mobley* was a fraudulent nondisclosure case. Here, Brown did not sue for fraudulent nondisclosure. It appears that the Bennetts have abandoned the claim that Brown could have discovered the cause of the flooding by exercising reasonable care. *See City of Richmond v. Suddarth*, 120 S.W.3d 212, 217 (Mo.App.2003) (argument deemed abandoned where appellant fails to

cite authority on point or to explain absence thereof).

**2.** The Bennetts contend that it was "possible and probable" that Brown saw pooling when she inspected the property in February 2001 because of the heavy rains that month. However, Brown testified to the contrary, and the trial court was entitled to believe her, since issues of credibility are for the finder of fact to resolve. *Uxa ex rel. Uxa v. Marconi*, 128 S.W.3d 121, 128 (Mo.App.2003).

right to rely on the Bennetts' misrepresentation, because she had investigated the property. A party who undertakes an independent investigation does not have the right to rely on the misrepresentations of another. *Wasson v. Schubert,* 964 S.W.2d 520, 527 (Mo.App.1998). However, there are three exceptions to this rule: (1) the investigating party makes only a partial investigation and relies upon both the results of the inspection and the misrepresentation; (2) the buyer lacks equal footing for learning the truth and the facts are not easily ascertainable, but peculiarly within the knowledge of the seller; and (3) the seller makes a specific and distinct misrepresentation. *Martin v. McNeill,* 957 S.W.2d 360, 364–65 (Mo.App.1997).

■ Although it could be argued exception two applied, exception three was clearly applicable. The Bennetts' (mis)representation that the property did not have any drainage or flooding problems is specific and distinct—as specific as one can get about flooding and drainage problems.

The Bennetts contend that Brown's fraud claim fails because the facts and circumstances are as consistent with the Bennetts' honesty and good faith as they are with fraud. According to the Bennetts, it was reasonable for them to assume that the problem was the City's to fix, and to assume that because stopping the flooding was not one of the City's priorities, neither should it matter to them.

■ The Bennetts' contention is not only improper; it goes beyond the scope of the point relied on, which limits what this court can review (except under plain error review). *Rea v. Moore,* 74 S.W.3d 795, 799 (Mo.App.2002). It is substantively flawed, as well. Even if it were reasonable for the Bennetts to assume the City would fix the problem, that does not excuse the falsehood they told Brown. The conclusion that the flooding was unimportant to them (because it was unimportant to the City) is both a non sequitur (what is significant to a homeowner may seem picayune to a municipality) and false. The Bennetts repeatedly complained to the City about the flooding, at one point reporting that the flooding "almost got into [the] house" and demanding that the City do something quickly.

■ The Bennetts' last three points are frivolous. In their third point, they claim that their misrepresentation was immaterial. Facts to which a reasonable person might be expected to attach importance in making one's choice of action are material. *Mo. Consol. Health Care Plan v. Cmty. Health Plan,* 81 S.W.3d 34, 43 (Mo.App.2002). Whether real estate has drainage or flooding problems is obviously an important matter to a purchaser. Here, the misrepresented fact (viz., the flooding problem) was not just material, but significant—it reduced the value of Brown's property by $23,000.

■ The fourth point, which takes up a mere two pages of the Bennetts' brief, is a hodgepodge. The Bennetts claim that they could reasonably rely on the position taken by the City, namely, that the flooding was insignificant. Maybe so, *but see supra,* but this did not give the Bennetts license to make any misrepresentation to Brown. The Bennetts next claim (within the same point) that "it cannot be said that the Bennetts intended to mislead [Brown]." Of course, it can, and it was; Brown said exactly that in her petition. Further, "questions of intent often present witness credibility issues[ ] that lie within the peculiar province of the [finder of fact]." *Constance v. B.B.C. Dev. Co.,* 25 S.W.3d 571, 588 (Mo.App.2000). The appellants have not given us any reason to believe that the trial court had no choice

but to conclude that the Bennetts' misrepresentation was unintentional. It was their burden to do so. *Clance v. Clance*, 127 S.W.3d 716, 719 (Mo.App.2004) (burden of demonstrating error is on appellant).

In their final point, the Bennetts submit that the trial court conferred a windfall on Brown, because Mr. Bennett had testified that the flooding problem could be fixed for $200, whereas the trial court awarded Brown $17,825 in compensatory damages. In addition, the Bennetts claim, the repair technique Brown's expert recommended would redound to the benefit of other homeowner's in the neighborhood.

■ Compensatory damages in a fraud action where the defrauded party retains the property are limited to the benefit of the bargain from the sales transaction. *Little v. Morris*, 967 S.W.2d 685, 686 (Mo. App.1998). To make Brown whole, it was unnecessary to award damages measured by the diminution in value of her property; awarding the cost of repair would make give her the benefit of the bargain. *See Wasson v. Schubert*, 964 S.W.2d 520, 525 (Mo.App.1998).[3]

■ Mr. Bennetts' testimony was in conflict with testimony by Brown's expert. Thus, since it is fact finder's exclusive province to resolve conflicting testimony, *Bailey v. Cameron Mut. Ins. Co.*, 122 S.W.3d 599, 605 (Mo.App.2003), the Bennetts' fifth point must fail. It also fails because there was ample reason to disbelieve Mr. Bennett. His testimony was self-serving; if the cheaper repair were effective, the Bennetts in all likelihood would have implemented it when they owned the property; and the repair rec-

ommended by Brown's expert was the one Columbia recommended (to the Bennetts). Moreover, there was reason to think that Mr. Bennett's repair would not have made Brown whole; namely, the fact that his repair would have been unsightly and required more maintenance than the repair favored by Brown's expert.

■ Regarding the Bennetts' contention that the $17,825 repair resulted in a windfall because the repair would benefit other homeowners: (1) The benefit-of-the-bargain principle is violated only if Brown is over-or under-compensated for the harm, that a third party benefits from Brown's recovery does not amount to a violation and (2) Even if the repair would violate the benefit-of-the-bargain rule, the judgment entitles Brown to a sum of money. She need not use the money to make the repair, which means any untoward third-party benefits from the repair (assuming such third-party benefits could be untoward), is not inevitable.

The judgment of the trial court is affirmed.

All concur.

---

3. *Wasson* and other cases say that the cost-of-repair test is "clearly limited to situations where repairs are only a small percentage of the diminution in value." 964 S.W.2d at 525. However, Brown has not cross appealed, and so whether the court was correct in deciding whether to award cost-of-repair instead of diminution-in-value compensatory damages is not before this court.